JOHN DALE *et al.*

*v.*

ROBERT T. LINCOLN, Assignee, etc.

1. DEED—*delivery.*—A husband having enlisted in the United States army in February, 1862, executed to his wife, for the expressed consideration of one dollar, a deed of his real estate, for the purpose of enabling her to dispose of it for the benefit of herself and family in case he should not return from the service. He caused the same to be recorded. The wife never saw the deed until after his death, which took place in October, 1862. She found it in his papers, which he had left in her possession. She knew he had said he was going to make the deed. After his death the wife received the rents of the property, offered it for sale, and finally sold the same : *Held*, that the facts showed a delivery by the husband, and that the wife's assent to the transaction was clearly evidenced by her receipt of the rents and offering to sell the property.

2. SAME—*delivery and acceptance.*—To render a deed operative there must be a delivery and acceptance. No particular form or ceremony is necessary to constitute either, but there must be satisfactory evidence that the grantee has either actually accepted the deed, or has sought to become the beneficiary under it. It is well settled that a deed may operate by a presumed assent until a dissent appears.

3. DEED—*husband to wife—validity.*—A husband having enlisted in the army during the late civil war, by deed conveyed his whole real estate to his wife for the expressed consideration of one dollar, to enable the latter to dispose of the same for the benefit of herself and family in case of his

death. After his death the wife sold and conveyed the same for its full value, and the proceeds were applied toward the support of herself and family. The heirs of the husband after their majority executed their conveyance for the same premises, and their grantee brought ejectment against the party holding under the deed from the wife: *Held*, on bill filed to enjoin the suit at law, that the husband's deed to his wife was void at law, but would be upheld in a court of equity.

(LAWRENCE, C. J., WALKER and McALLISTER, J. J., dissenting.)

APPEAL from the Circuit Court of Kankakee County; the Hon. CHARLES H. WOOD, Judge, presiding.

Mr. STEPHEN R. MOORE, for the appellant.

Messrs. WILLIAMS & THOMPSON, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The points made by appellants on this record are: 1. Was the deed made by Charles M. Vaughan to his wife *Cecelia* during coverture, a good deed at law, and sufficient to pass the title? 2. Was there a delivery of the deed from Vaughan to his wife? 3. Was the deed sufficient in equity to pass the title?

The first question is answered and disposed of by the admissions in complainant's bill, wherein it is conceded that by the rules of the common law the deed from Vaughan to his wife was void, and that the legal title to the premises did not pass thereby, so as to enable his wife to convey the same to the Douglas Linen Company, represented by complainant.

As to the second question, Was there a delivery of the deed from Vaughan to his wife Cecelia, this is to be determined by the facts and circumstances of the case, and the legal inference to be drawn from them.

It appears the lots in question composed the bulk of the property of the grantor, Vaughan, who, having, in February, 1862, entered the army and about to take the field, on the twenty-second day of that month, executed a deed to his wife for the expressed consideration of one dollar for these lots, for the purpose that she might dispose of them as best she saw fit

for the benefit of herself and family should he not return from the service. He was wounded, and died from the effects of the wound in October, 1862, before his term of service expired, and never returned. This was the testimony of Dr. Knott, the family physician, given without objection, though he was not present when the deed was executed, nor did he see it delivered. He further stated that he knew the purpose of the deed, first from Mr. Vaughan himself, and afterward from his wife about the time he made the deed. Mrs. Vaughan in her testimony states that she never saw the deed until after her husband's death—that she found it among his papers which had been in her possession all the time; that she knew her husband said he was going to make this deed ; is not positive whether he said where it was ; he said there were papers, but didn't know of his mentioning a deed particularly.

A further fact appears that Mrs. Vaughan received the rents of the property after the death of her husband, and authorized, verbally, Dr. Knott to effect a sale of it, giving him the deeds in her possession. Her agent did bargain the property to one Billings for a sum equal to its value, as the agent supposed, but Mrs. Vaughan would not carry out the contract.

There is no dispute between these parties that to render a deed operative there must be a delivery and acceptance, not that any particular form or ceremony is necessary to constitute either, but there must be satisfactory evidence that a grantee either actually accepted the deed or has sought to become the beneficiary under it, before any litigation has occurred involving the question of acceptance.

Mrs. Vaughan knew her husband intended to make a deed to her of this property, to do with it as she pleased for the benefit of her family ; he referred her to the papers which had always been in her possession ; and, with the deed in her possession, she offered the property for sale, and received the rents.

It is well settled, that a deed may operate by a presumed assent until a dissent appears, and then it becomes inoperative, on the principle that a person can not be made a grantee against his will and without his agreement. 4 Kent's Com., 447.

It is very apparent that Vaughan had, for a good purpose, parted with all his right to this property and vested it in his wife, so far as he could do so, by the acts done. Placing it upon record, which it is inferrible he did, was notice to all where the title was, and that fact was *prima facie* evidence of a delivery, on the authority of *Himes* vs. *Keighblingher*, 14 Ill., 469, and the possession of the deed by Mrs. Vaughan from the day it came to her hands or the hands of her attorney, affords still further evidence of a delivery. *Canning* vs. *Pinkham*, 1 N. Hamp. 357; *Clark* vs. *Ray*, 1 Harris and Johnson, 323.

These are all presumptions, and appellants contend they are sufficiently rebutted by the fact, that the deed was found among the papers of the grantor after his death, up to which time, the grantee, Mrs. Vaughan, had not seen it. But when it is considered Mrs. Vaughan knew a deed was to be made to her, and the papers delivered to her, and which had been in her possession all the time, the inference is a fair one, when taken in connection with the fact that she received the rents of the property, and authorized an agent to sell it for her, that the deed had been delivered to her and accepted by her—her assent must be presumed until her dissent is shown. This, appellant's counsel contends has been shown by her declarations when negotiations favorable to the company were in progress, she then declaring, according to the testimony of some of the witnesses, that she had no title to the lots—that they belonged to the children. It will be assumed in this connection that she nowhere and at no time declared she had no title because the deed was not delivered to her, but upon the want of power in a husband to convey land by deed to his wife. This was the idea of her attorney, and this must be assumed as the ground of her belief. That she did assent to this deed is shown, we think, very satisfactorily by all the facts.

The remaining point is, will equity sustain this deed so as to pass the title to Mrs. Vaughan?

The books furnish many cases where deeds and bonds not being valid in law have been sustained in equity. So long ago

as Lord Macclefield's time, it was held when a *feme sole* seized in fee of lands gave a bond to her intended husband, that in case of their marriage she would convey these lands to him and his heirs; that having married and the wife dying without issue and then the husband dying, that the bond, though void in law, yet was good evidence of the agreement in equity; and the heir of the husband could compel a specific performance against the heirs of the wife. The Lord Chancellor said, it would be unreasonable that the intermarriage, upon which alone the bond took effect, should itself be a destruction of the bond; that the foundation of the notion was, that in law the husband and wife being one person he could not, at law, sue his wife on this agreement; whereas, in equity, it is constant experience that the husband may sue the wife and the wife the husband; and he might sue her in this case upon this very agreement. *Cannel* v. *Buckler*, 2 Willes, 249, (2 Eq. Cases abridged, 136.) We cite this case, and many others to the same effect could be referred to, as showing that a court of equity will sustain a contract void at law, and that the same reason is given in the case before us, why a deed from a husband to his wife is invalid; that is, that they are one person in law, as was given in the case cited.

It is no doubt true, as stated by Justice Story in his treatise on equity jurisprudence, that, in respect to gifts or grants of property by a husband to his wife after marriage, they are ordinarily, but not universally, void at law, yet courts of equity will uphold them in many cases, when it appears from the circumstances and nature of the gift or grant, whether it be expressed or implied, that they are such as to afford no ground to suspect fraud, and the same amounts only to a reasonable provision for the wife. Story's Eq. Juris. § 1,374.

We have examined the numerous authorities cited on both sides, and are satisfied with the views presented by Chancellor Kent in *Shepard* v. *Shepard*, 7 Johns. Ch. 57. In that case the husband, in consideration of love and affection, and to make a sure maintenance for his wife in case she should survive him, made to her an absolute deed of all his real estate during

her widowhood.  Entertaining the idea that this deed might be inoperative, he afterward made a deed of the same property to his son.  After a full review of the authorities the chancellor held that the deed to the wife, in the light of the authorities, could be sustained, and decreed that she be put in possession of the premises, and all persons be enjoined from disturbing her.

The case of *Jones* v. *Obenskain*, 10 Grattan (Vir.), 259, was a deed, the only consideration for which was love and affection for his wife, conveying his whole estate to her to the disinherison of his heir-at-law, and fully sustains the view we have taken of this case—the deed to the wife being upheld against the claim of the heir-at-law.  Other cases are cited to the same effect, and among them *Hunt* v. *Johnson*, 44 New York, sustaining the opinion of Chancellor Kent in *Shepard* v. *Shepard, supra*.  It is true, in the deed in question, the consideration is expressed to be one dollar, but the paramount consideration was, as proved, that out of the property his wife and children should have some means of support, small as they might be, and, although it was the whole of his estate, it was but a small competence.

It is in proof the price paid for the property by the company was all it was worth, and that the money received for it has gone to the support of his wife and children, as the grantor intended it should go.  A proper case is made out for the interposition of a court of equity to uphold this deed.

This case is relieved from all suspicion of fraud, though the whole estate was conveyed—itself of small value—there being no creditors in the way, and that the justice of it demands the deed should be upheld we can not doubt.  It would be inequitable and unjust, the property having sold for its value, and the proceeds gone to the support of the wife and children, that they should be restored to the land and the wife to her dower interest in it.  We can not help believing, from the testimony in the cause, that the papers given by the husband to his wife, and the deed put on record by him, was equivalent to a delivery, and her assent to the transaction is

clearly evidenced by the receipt of rents and offering to sell the property. She exercised the same control over it every owner exercises over his property ; and she believed it to be hers until an opportunity arrived when it was thought by disclaiming any right to it she and .her children might derive a further benefit from it.

We are of opinion every consideration of right, justice, and equity requires that the decree of the Circuit Court should be affirmed, and it is accordingly affirmed.

LAWRENCE Ch. J., WALKER and McALLISTER, J. J., dissent.