## Logan Byars *et al.*

### *v.*

## Mary E. Spencer *et al.*

*Filed at Mt. Vernon January 18, 1882.*

1. Delivery of deed—*essential to its validity.* A delivery is essential to render a deed operative, and it does not take effect until it is delivered. Without delivery it is void.

2. Same—*what amounts to a delivery—to whom it may be made.* The delivery of a deed may be to the grantee or to his agents, and no particular form or ceremony is necessary to constitute a sufficient delivery. It may be by acts, or words, or both; but what is said or done must clearly manifest the intention of the grantor and of the grantee, that the deed shall at once become operative, to pass the title, and that the grantor shall lose all control over it.

3. Where a deed is executed and delivered to a stranger, to be delivered to the grantee, without conditions, it will be a sufficient delivery to pass the title; but the execution of a deed, and having it recorded, without the knowledge of the grantee, is not a delivery.

4. When the facts show that the grantor did not intend to lose control over the deed, and he still continues to have power over the title without the consent of the grantee, there is not such a delivery as the law requires to render it a deed, and it can not pass title.

5. So, where a father made and acknowledged a deed to his two minor children, but retained it until his death, and declined to have it recorded, on the express ground that he would thereby place the title beyond his power or control, and expressed an intention, after he had made and acknowledged the deed, to sell the land if he could get a certain price, and in pursuance of that intention did offer to sell the land, it was *held,* that the deed was inoperative for want of a delivery.

6. JUDICIAL SALE—*party can not impeach, and still retain the proceeds.* A party can not impeach a sale of his interest in land, under a proceeding by his co-tenants, when he has received and retains his share of the proceeds, on any ground, either for want of jurisdiction in the court ordering the sale, or for any irregularity in the sale. He who seeks equity must do equity. Before he can be heard to deny the validity of the sale he should restore, or offer to return, the money so received by him.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Messrs. BARR & LEMMA, and Mr. G. W. SMITH, for the plaintiffs in error.

Mr. ANDREW D. DUFF, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that one Thomas Whitson, of Jackson county, in this State, was, in his lifetime, the owner of one hundred and seventy-four acres of land, situated in that county; that the land was improved, and he resided on the same many years before his death. He was twice married, and was the father of eleven children, nine by the first and two by the latter wife. He survived both, and the children by the first wife, being grown, had left him, and he remained on the farm with complainants, the two children by the latter wife. They were minors, the one eight and the other ten years of age. He made, executed and acknowledged a deed conveying this land to them. The deed was made in July, 1864,

but was never delivered to the grantees, or to any person for them, nor was it recorded, nor did it ever pass out of the possession of the grantor or from under his control. At the time he made it he took it, after acknowledging it, to his house, and placed it in a drawer of a bureau with other papers, where it remained till the time of his death. He went to Worthen, a justice of the peace of Jackson county, and said to him he wished to convey these lands to his two minor daughters. He said to Worthen: "You know that I have given to my children by a former wife, that are grown and have left me, a good farm. These little ones have yet to be raised. I think it nothing but right that they should be provided for, making it equal with the others." The deed was made and acknowledged at the time this conversation occurred.

Subsequently, Worthen, in a conversation with Whitson, suggested to him that he should have the deed delivered and recorded. Whitson replied, that he, being the natural guardian,—the father of the children,—was the proper person to hold it; and with regard to recording it, he had an objection to its being recorded at that time, because if he could sell the land for $6000 he would divide the proceeds between the two children, but if the deed was on record he could not sell it, because of the deed being recorded; nor could the girls sell it, because they were minors. If the deed remained, then, unrecorded at his death, it would show his intention,— what he would do,—and right would be done. Whitson said, in conversation with Worthen's wife, that in value more was given to these two children than to the others; but he considered the matter in the light of the fact that the older children were raised, and "doing for themselves," but these two were to be raised, and added, he did not expect to live to raise them. He, but a short time before his death, offered to sell the land, and on several occasions called it his. Letters of administration were granted to Benj. B. Whitson, who

took possession of the personal effects of deceased, and closed up and settled the affairs of the estate. Complainants charge that the administrator obtained possession of the deed, and destroyed or suppressed it, and there is some evidence that the deed came to his hands after the death of his father; but he denies it in his sworn answer, and deposition, and denies ever having seen it, or of having any knowledge that it ever existed.

Izir Byars, one of the sons-in-law of Thomas, after the death of the latter, purchased of a number of the heirs their claims to or interest in the property, representing nearly one-half. He thereupon filed a bill against the heirs who had not sold, for a partition. On the hearing the court appointed commissioners to make partition, but they reported that the land was not susceptible of division without manifest injury to the parties in interest. The court approved the report, and thereupon decreed the sale of the land, and decreed that the master in chancery make the sale, after specified notice, etc. The sale was made to the Mount Carbon Coal and Railroad Company, now the Grand Tower Mining, Manufacturing and Transportation Company, for the sum of $7852.95, which was distributed and paid to the several parties to the bill, according to their interests as found by the court, the complainants receiving their share, under the order of the court.

In the view we take of the case these are the material facts. Other facts are averred, and evidence was heard on them, but we regard them immaterial to the decision of the case. The bill prayed that the title of complainants might be established and confirmed; that the proceedings for partition might be set aside as void, and that all deeds from the heirs to Izir Byars be held and declared void as to them. On a hearing the circuit court decreed the relief asked, and the defendants below bring the record to this court on error, and urge a reversal.

The first question we propose to consider is, whether the deed executed by Thomas Whitson ever became operative to pass the title to the grantees named in the deed,—whether there was such a delivery as passed the title to the land from him to them. It is conceded that to have that effect there must have been a delivery. On the one side it is claimed there was, and on the other it is insisted there was no delivery. The question as to what acts are necessary to constitute a sufficient delivery to render a deed operative and to pass the title to the land, has been the subject of much discussion in this court. It is held that a delivery is essential to render a deed operative, and it does not take effect until it is delivered. *Skinner* v. *Baker,* 79 Ill. 496 ; *Blake* v. *Fash,* 44 id. 302. It may be delivered to the grantee or to his agent. Nor is any particular form or ceremony necessary to constitute a sufficient delivery. It may be by acts or words, or both, or by one without the other ; but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative, to pass the title to the land conveyed, and that the grantor loses all control over it. *Bryan* v. *Wash,* 2 Gilm. 557. It has been held that where a deed is executed and delivered to even a stranger, to be delivered to the grantee, without conditions, it will be a sufficient delivery to pass the title. *Rawson* v. *Fox,* 65 Ill. 200. But the execution of a deed, and having it placed on record, without the knowledge of the grantee, is not a delivery. *Kingsbury* v. *Burnside,* 58 Ill. 310 ; *Krebaum* v. *Cordell,* 63 id. 23. But in such a case the subsequent assent of the grantee will be sufficient. *Dale* v. *Lincoln,* 62 Ill. 22.

In *Gunnell* v. *Cockerill,* 79 Ill. 79, it was held, that any act which clearly manifests an intention of the grantor and the person to whom it is delivered that the deed shall presently take effect and become operative, and the grantor loses all control over it, is a sufficient delivery. In all cases the inten-

28—101 ILL.

tion of the grantor to part with its possession and control enters
largely into the question of delivery. When the facts show
that the grantor did not intend to lose control of the deed,
and still continues to have power over the title without the
consent of the grantee, there is not such a delivery as the
law requires to render it a deed, and it can not pass title. In
this case Thomas Whitson, so far from manifesting such an
intention, on the contrary retained the deed, and declined
to have it recorded, on the express ground that he would
thereby place the title beyond his power to control it. He
also expressed the intention, after he had made and acknowl-
edged it, to sell the land if he could do so at $6000, and in
pursuance of that intention he did offer to sell it. Instead
of his doing or saying anything indicating an intention to de-
liver the deed, his declarations and acts clearly prove that he
did not intend to deliver the deed or place the title in the
grantees. Under none of the cases referred to can it be held
there was a delivery, but they all hold there could not, under
the facts of this case, have been a delivery, and there being
no delivery the complainants took no title under the deed.

It is, however, insisted by defendants in error that the case
of *Dale* v. *Lincoln, supra,* is in fact and principle so nearly like
this that it requires an affirmance. There is a broad distinc-
tion between that and this case. There, the grantor had the
deed recorded, and all of his acts showed he intended the
title to pass to the grantee; nor did he do or say anything
that showed an intention to retain any control over it while
he was in the army. Again, it was a delivery in escrow, and
he directed that it should take effect on his death, if he should
die in the army. The grantee having sold the land after the
death of the grantor in the army, it was by a majority of the
court held there was a sufficient delivery to pass the title, in
equity, the grantee being his wife. Here, the deed was not
recorded, and was not, for the express purpose of retaining
the power to control it by the grantor.

The case of *Reed* v. *Douthit*, 62 Ill. 348, is referred to as announcing rules that govern this case. In that case a father signed, sealed and acknowledged a deed to his minor son, saying he intended it as a provision for the son. He spoke of the land as his son's, who rented a portion of the land in the lifetime of the father, and exercised other acts of ownership over the land, and had the deed recorded after the death of his father, and had possession of the deed, and this was held to be evidence of the delivery of the deed, and cast the *onus* of proving a want of delivery on the parties questioning the grantee's title. There was no direct proof of a delivery of the deed, but the grantee had possession of it after his father's death. Those claiming to be tenants in common insisted that he was required to prove a delivery by specific evidence, but it was held that a delivery would be presumed under the circumstances appearing in evidence. But in this case there is evidence that the deed was not delivered, nor was it intended to be delivered. This fact clearly distinguishes this from that case.

Defendants in error refer to *Stinson* v. *Anderson*, 96 Ill. 373. In that case the father made and acknowledged a deed to his three minor children, and left it with the justice of the peace before whom it was acknowledged, requesting him to keep it for the grantor, saying, if he wanted it he would call for it, but if he died that he deliver it to the grantees. The grantor afterwards mortgaged the same land to a third party, and it was held there was not a delivery to pass the title. There, as here, the grantor retained control over the deed, and it was held there was no delivery, and no title passed. In this case it clearly appears that it was the intention of Thomas Whitson to provide for these minor children by giving them this land, or its proceeds, but he failed to do so by omitting the observance of essential requirements of the law to effectuate the purpose. He seemed to rely on the sense of justice of his children by his first wife, and their supposed respect for

his wishes, to fulfill and carry them into effect. He said to Worthen, if the deed remained there unrecorded at his death, it would show his intention as to what he would do, and right would be done. But he misplaced his confidence, as his children by the former marriage have failed to carry out his manifest intention. His intention is clear, but he failed to execute it. Complainants, therefore, took nothing under this deed, but simply by his death inherit in common with the other heirs.

Complainants ask that the proceedings in the partition suit be vacated and set aside, because they are void. The record discloses the fact that this land was sold, under the decree in partition, for $7852.95, and the proof shows the money was distributed among the heirs of Thomas Whitson, deceased, and that complainants received their proportionate share of the money. This they have not restored or offered to return to the corporation. It would be manifestly unjust, and highly opposed to every principle of equity, to permit them to set aside the sale and recover the property and also to hold the money. The maxim is, that the party who seeks equity must do equity. Complainants have not done equity, nor have they offered to do so, by returning the money. The principles announced in the cases of *Penn* v. *Hiesey*, 19 Ill. 295, and *Walker* v. *Mulvean*, 76 Ill. 18, are conclusive on this question. In the former of these cases the guardian had sold the property of the ward under a license from the court, but the sale was never approved. It appeared the guardian applied a portion of the proceeds of the sale to the purchase of other lands, and accounted for the balance on a final settlement with the ward. Suit was brought to recover the land by the ward, and defendant, who claimed under the guardian's sale, brought a suit to enjoin the suit at law, and it was held that the injunction was properly granted restraining the prosecution of the suit. In the latter of these cases land of minors was sold under a decree in partition, and

after coming of age they received their just proportion of the money with a knowledge of the facts. It was held they could. not assert title to the land, and were prevented from denying the validity of the sale, on any ground, either as to the jurisdiction of the court or for any irregularity of the sale.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*

Mr. Justice Mulkey having been once consulted in this case, took no part in its decision.