JOHN P. JOHNSON, PLAINTIFF AND APPELLEE, V. J. VANDERVORT AND OLIVER A. JENNINGS, DEFENDANTS AND APPELLANTS.

**Husband and Wife.** At common law, a deed from a husband directly to his wife was void in law. And where, in contemplation of a separation and divorce, a husband executed and delivered a conveyance directly to his wife of an undivided half of certain wild land, and without entry upon the land, or applying to any court for relief or aid in the premises, seventeen years afterwards, she having in the meantime obtained a divorce and remarried, executed a warranty deed of the land to the plaintiff, *Held*, That the same carried no title to the plaintiff, and his petition for partition of said land dismissed.

APPEAL from Richardson county. Heard below before DAVIDSON, J. The action was brought there to settle the interest of plaintiff and defendant as tenants in common, to quiet title and obtain a partition of the land in controversy. Plaintiff claimed title through Mary Jane Hare, to whom the undivided one-half of the land had been conveyed by her husband. Defendants claimed title direct from Thomas R. Hare whose deed had been made by an attorney in fact, subsequent to the conveyance of Thomas R. to Mary Jane. Decree below for plaintiff. Further facts appear in the opinion.

*C. Gillespie* and *Martin & Gilman* for appellants.

*E. W. Thomas, A. Schoenheit,* and *C. W. Johnson,* for appellee.

COBB, CH. J.

It is claimed by both parties that this case turns upon the effect to be given to the deed from Thomas R. Hare to Mary Jane Hare, his wife, on the 13th day of February, 1865. If this deed conveyed the legal title in and to the

land in controversy to Mary Jane Hare, then her deed exe-
cuted by her and her husband, after she became the wife
of Andrew J. Akers, to the plaintiff on the 20th day of
January, 1882, also carried the title to him. On the other
hand, if after the execution and delivery of the deed of
February 13, 1865, the legal title, whatever may have been
the equities between Mr. and Mrs. Hare as evidenced by
the said deed, remained in the former, then such title pass-
ed to the defendants by virtue of the other conveyances set
out in the pleadings and evidence. It is not denied, nor
can it be, that at the date of the deed from Thomas R. to
Mary Jane Hare the common law, unaffected by what is
generally termed liberal or modern legislation as to the
powers and rights of married women, was in force in the
then territory of Nebraska. At common law a deed
from husband to wife was void. 1 Co. Litt., 3 a. *Moyse v.
Gyles*, 2 Vern. R., 385. *Beard v. Beard*, 3 Atk. R., 72.
The case of *Shepard v. Shepard*, 7 John. Chy., is a lead-
ing American case, and while it holds that the conveyance
in that case would be enforced as an evidence of an equity
in favor of the wife, yet the chancellor in the opinion states
the law the same as the English cases above cited. He says:
"The deed from H. S. to the plaintiff was undoubtedly
void in law, for the husband cannot make a grant or convey-
ance directly to his wife during coverture. In equity the
courts have frequently refused to lend assistance to such a
deed, or to any agreement between them. Thus, in *Stoit v.
Ayloff*, (1 Ch. Rep. 33,) the husband promised to pay his
wife 100 pounds; they separated and she filed her bill for
the sum. But the court would not relieve the plaintiff
because the debt was sixteen years old, and the promise
made by a husband to a wife, which the court conceived to
be utterly void at law. Again in *Moyse v. Gyles*, (2 Vern.
385), the husband made a grant or assignment of his in-
terest in a church lease to his wife. She brought a bill
after his death to have the defective grant supplied, and

12

the court held the grant to be void in law and dismissed the bill, as the grant was voluntary and without consideration. So in *Beard v. Beard*, (3 Atk. 72), the husband, by deed poll, gave to his wife all of his *substance* which he had or might thereafter have. Lord Hardwicke considered the deed poll to be so far effectual as to be a revocation of a will by which the testator had given all his estate to his brother; yet that it could not take effect as a grant or deed of gift to his wife, 'because the law will not permit a man to make a grant or conveyance to his wife, in his life time, neither will this court suffer the wife to have the whole of the husband's estate while he is living, for it is not in the nature of a *provision*, which is all the wife is entitled to.'

" It is to be observed " (continues the chancellor), " that none of these cases were determined strictly and entirely upon the incapacity of the husband to convey to the wife according to the rule of law; and they do not preclude the assertion of a right in a court of equity, under certain circumstances, to assist such a conveyance. The court relied upon the staleness of the demand in the first case, and upon the want of consideration in the second, and upon the extravagance of the gift in the third, as also constituting grounds for the decree; and it is pretty apparent, that if the grant in each case had been no more than a suitable and meritorious *provision* for the wife, the court would have been inclined to assist it. In *Slauning v. Style* (3 P. Wms., 334), Lord Talbot said, that courts of equity have taken notice of and allowed feme coverts to have separate interests by their husbands' agreement, especially where the rights of creditors did not interfere. And in *More v. Ellis* (Bunb., 205), articles of agreement executed between husband and wife were held binding without the intervention of trustees. So in *Lucas v. Lucas* (1 Atk., 270), Lord Hardwicke admitted, that in chancery, gifts between husband and wife have often been supported, though at law

the property is not allowed to pass, and he referred to the the case of Mrs. H. and that of Lady Cowper. And in the very modern case of *Lady Arundel v. Phips* (10 Ves., 146), Lord Eldon held, that a husband and wife, after marriage, could contract for a *bona fide* and valuable consideration for a transfer of property from the husband to the wife, or to trustees for her."

The chancellor continues, " The consideration for the deed to the wife in the case before me was meritorious. It was natural affection, and to make sure a maintenance for said Anna S., wife and consort of H. S., in case she should survive him. She had been induced, prior to the marriage, to release to H. S. all right and claim of dower to arise under the intended marriage, and the consideration of the release was an engagement on his part that she should have dower in any real estate' to be purchased by them by their prudence and industry during the cohabitation. But no estate was purchased by them by those means, and, according to the literal terms of those deeds, she was barred of her dower without any substitute. The deed to the wife of certain lands, being part and parcel of his estate, for and during her widowhood, was therefore no more than a just and suitable provision, and one which a court of equity can enforce consistently with the doctrine of the cases. The defendant does not stand in the light of a creditor or a purchaser for a valuable consideration without notice, and we have none of the difficulties before us which such a character might create. He does not deny notice of the existence of the deed to the plaintiff, when he received the deed of the same lands from H. S.; and he does not pretend that he gave anything more than the nominal consideration of twenty-five dollars though the consideration of one thousand dollars was inserted in the deed. The fact that he did, on the day of the date of that deed, reconvey the lands to H. S., his father, for life, and did annex thereto a covenant to pay the plaintiff an

annuity of sixty dollars during her widowhood (which he now says is more than the annual value of the land,) is decisive evidence that he took the land of his father, *with knowledge* of the equitable claim of the plaintiff, and with an engagement on his part to give her a reasonable compensation in extinguishment of that claim. I conclude accordingly," he proceeds, " that the deed from the husband may and ought, in this case, to be aided and enforced by this court. * * * But if the deed of 1808 was out of the question I would then have no difficulty in declaring that the defendant was bound to pay her the stipulated annuity, or the gross sum of four hundred dollars in lieu of it on her releasing all right and title as wife of H. S., to his estate, as described in the deed to the defendant. The relationship between the husband and wife was sufficient to entitle the plaintiff to her action on the covenant to her husband and which was made for her benefit. The consideration inured from the husband, and arose from the obligations of that relation, and the release of the defendant from his covenant by H. S. was fraudulent and void, as respected the plaintiff, who had the sole beneficial interest in the covenants and who was alone entitled in equity to release them. * * * But it is unnecessary to dwell longer upon this second point. The plaintiff is entitled to the use and enjoyment of the land contained in the deed during her widowhood; and as the deed is void at law and can only be sustained in a court of equity, it becomes necessary that the remedy should be afforded here, and it forms a just and proper subject of equitable jurisdiction."

Applying the law thus stated by the great chancellor and derived from the above authorities, to the case at bar, it irresistibly leads to the conclusion that Mary Jane Hare acquired no legal title to the lands in question by the deed from her husband, but that said deed was evidence of a provision made for her support by her husband, which

upon timely application by her for that purpose would have been aided by a court of equity. But she made no such application. If the said conveyance was intended as a provision for her it seems that she never accepted of it, nor took any steps towards availing herself of its benefits. We only find her seventeen years afterwards in a distant state executing a deed of said premises to the plaintiff. In *Stoit v. Ayloff, supra,* the court would not relieve the plaintiff "because the debt was sixteen years old," etc., and that case was decided in an age when statutes of limitation ran vastly longer and were viewed with far less favor than now. Had she at the time of executing the deed to plaintiff have filed her bill for aid in a court of equity it would undoubtedly have been denied as a stale claim.

But what passed to the plaintiff by virtue of this deed from Mary Jane Akers and husband, on the twentieth day of January, 1882? Certainly not a legal title, for we have seen that the deed to her was void at law. That she at one time possessed an equity, evidenced by the said conveyance, is admitted, but even had her claim not become stale and inoperative by lapse of time, I have been unable to find any case where such an equity has been held to be assignable and available in the hands of an assignee, and I doubt if the general provision of the code making choses in action assignable would extend to a case of this character. But be that as it may, there is no pretence of an assignment of a chose in action in this case. The plaintiff's case rests solely upon whatever might pass by virtue of a warranty deed of real property. And as we have seen, there being no title in his grantors none passed to him.

The judgment of the district court is therefore reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.

REESE, J., concurs.

MAXWELL, J., dissenting.

I am unable to give my assent to the decision of the majority of the court, for the following among other reasons. It appears from the record that in 1865, one Thomas R. Hare, being the owner of the w. $\frac{1}{2}$ of the s. w. $\frac{1}{4}$ of sec. 28, t. 2 n., r. 15 e., and the s. $\frac{1}{2}$ of the n. e. $\frac{1}{4}$ of sec. 32, in the same township and range, executed a warranty deed for an undivided half of the same, and delivered it to his wife, Mary J. Hare. The consideration named in the deed is $300. Soon afterwards the parties were divorced. In 1870, Hare executed a power of attorney to one Hirn, authorizing him to sell "all and singular my real and personal property situated in Richardson county," etc. Under this power of attorney the deed in question was made. Now even if the common law rule prevails, that the deed was void, still, excepting creditors, no one could avoid it but the grantor. He may have regarded it as valid, and probably did. The deed to Mrs. Hare was in proper form and was on record, and was notice to all the world of whatever rights she possessed under the deed. The question whether he intended to disaffirm his deed to his wife by the execution of the power of attorney is a question of fact to be determined by the court or a jury. But even if the deed was void at *law*, and Hare intended to convey the land by the power of attorney, still the action ought not to be dismissed. A deed from a husband to his wife was void at common law, because the husband and wife were considered one person and that person the husband. A conveyance from a husband to his wife therefore was a conveyance to himself, and passed no title. And the courts of common law had no power to grant equitable relief. If that was sought, resort must be had to a court of equity. Courts of equity, while fully recognizing the marriage relation, treat the husband and wife as distinct persons, capable of entering into contracts with each other and of holding property separate

and distinct. Whenever, therefore, any equitable ground for relief has existed in favor of the wife her rights have been protected in the same manner as though she was unmarried. And such has been the rule in this state: In *First National Bank v. Bartlett*, 8 Neb., 325, a quit claim deed from Bartlett to his wife was sustained upon the ground that the money that purchased the property belonged to the wife. No new deed was required, nor a decree for a new deed, but the equities of the case being in favor of the wife the deed was sustained. The rule is that equity will uphold a conveyance from husband to a wife, although no trustee has been interposed to hold for her use, whenever any sufficient cause, such as a valuable consideration, is shown in favor of the wife. *Wallingford v. Allen*, 10 Peters, 583. *Dale v. Lincoln*, 62 Ill., 22. *Majors v. Everton*, 89 Ill., 56. 31 Am. Rep., 65. Boone on R. P., § 282. In this case a valuable consideration is clearly shown, and where such is the case courts of equity do not at the present time require the wife to go into court to reform the deed. An examination of the principal case case cited in support of the majority opinion will show that the deed was sustained in equity, notwithstanding a second deed had been made to another party by the husband. The principal case relied upon in the majority opinion therefore does not seem to sustain the decision in this case. In my view, great injustice has been done, and I respectfully dissent from the conclusions reached.