MARY L. WANSER ET AL. V. ROBERT LUCAS.

FILED APRIL 16, 1895. No. 6447.

| 44 | 759 |
| 49 | 632 |
| 52 | 327 |
| 52 | 598 |
| 52 | 649 |
| 53 | 158 |
| 44 | 759 |
| 57 | 490 |

1. Fraudulent Conveyance: DEED FROM HUSBAND TO WIFE: CONSIDERATION. A conveyance of real property from a husband directly to his wife, although void at common law, may be sustained if resting upon equitable grounds, such as a sufficient money consideration.

2. ———: ———: ———: EVIDENCE. Evidence examined, and the advancement of money to the husband by the wife out of her separate estate *held* a sufficient consideration for the conveyance to her by the former of all his property, real and personal.

3. Ejectment: DEFENSE. The defendant in an action of ejectment may interpose any defense, legal or equitable, the effect of which is to negative the plaintiff's right of possession.

ERROR from the district court of Pierce county.  Tried
below before NORRIS, J.

O. J. Frost and Wigton & Whitham, for plaintiffs in error.

H. C. Brome, contra.

POST, J.

This is a petition in error and presents for review a judg-
ment from the district court of Pierce county.  The essential
facts as they appear from the pleadings and proofs are as
follows: On the 29th day of September, 1876, R. S. Lucas,
late of said county, conveyed by warranty deed to his wife,
Ada W. Lucas, the south half of the northwest quarter
and the north half of the southwest quarter of section 34;
the north half of the northwest quarter and the north half
of the northeast quarter of section 35; the undivided one-
half of the north half of the northeast quarter, and the
south half of the southeast quarter of section 27; the un-
divided north half of the southeast quarter of section 34;
the undivided half of the north half of section 26, and a
half interest in the townsite of Pierce, all situated in town-
ship 26, range 2 west, in said Pierce county, beside the
grantor's personal property of every description, including
moneys and credits, for the expressed consideration of $100.
The value of the property above described, including a bal-
ance in bank of about $500 and some $1,200 in county
warrants, was from $12,000 to $15,000.  Said Lucas, who
died in the month of November, 1877, left surviving him
ten children, the fruits of his marriage with the said Ada
W., ranging from two to twenty years of age.  His widow
was soon thereafter married to Amos W. Seeley, who died
some time prior to the 29th day of December, 1884, the
exact date of his death not being shown by the record,
leaving one child the fruit of said marriage.  On the day
last named said widow, by written lease, conveyed a por-

tion of the premises- above described to the defendant in error Robert Lucas, who is one of the children and heirs at law of R. S. Lucas deceased, for the period of ten years from and after said date. This action was subsequently brought by the plaintiffs, as tenants in common, to assert their rights to said property as heirs of R. W. Lucas, claiming that the conveyance first above mentioned and also the said lease are void and ineffectual for the purpose of passing title or conferring any right of possession as against them.

The cause as presented to the district court involved several interesting and important questions which are not necessarily included in the present investigation, and will not, therefore, receive more than a passing notice.

It is argued by the plaintiffs : (1.) That the deed from R. S. to Ada W. Lucas was never delivered in such manner as to give effect thereto as a conveyance of real estate. (2.) It was made in lieu of a will to take effect, if at all, after the death of the grantor. (3.) If delivered as claimed, it was made with intent to provide for the grantor's wife by conveyance of all his property, with nothing reserved for his children, a provision unreasonable and, therefore, void. Mr. Lucas, at the date of the deed, was contemplating a visit to the Centennial Exposition at the city of Philadelphia, and there is evidence strongly tending to prove that he was possessed by a morbid fear, amounting almost to a conviction, that he would not live to return. There is also evidence which would warrant the inference that the conveyance was originally intended rather as a testamentary disposition of the property therein mentioned, to take effect after the death of the grantor. Mrs. Lucas, it should be remarked, died some time previous to the commencement of this action, and the question of the understanding between herself and her husband at and before the execution of the deed is left in doubt. The defendant, who was then a member of his father's family, testified as follows : "I

think the day before my father started to the Centennial he handed the deed over to my mother and said, 'Here, Ada, is the deed. I have turned everything over to you, and in case I die, or anything happens to me, you will have no trouble.' * * * Mother took the deed, saying: 'O, there is not going to anything happen to you.'" But whatever may have been the intention of the grantor at the time to which we have referred, there is evidence of a subsequent delivery with intent to invest the grantee with the legal and equitable title to the property in controversy. To Mr. Frady, who accompanied him on his visit to Philadelphia, he remarked after his return that he intended to leave the deed in force—that Mrs. Lucas should keep the family together; and about three weeks before his death he remarked to the witness, in the presence of Mrs. Lucas, that he had conveyed the homestead, together with the other property, to his wife, and that the details were all fixed. Mr. Hall, a neighbor and intimate acquaintance, testified that Mr. Lucas assured him during his last sickness, and about a month before his death, that everything (referring to his property) was fixed up in the event of his death, and that Mrs. Lucas, who was present at the time, got the deed and showed it to the witness. J. H. Brown, who had for several years been engaged with Mr. Lucas in business, and through whom the latter acquired title to most of the real estate conveyed, testified to a conversation with him, Lucas, a few days previous to the execution of the deed, in which he remarked to the witness that he was about to convey his property to his wife; that her money had paid for it, and that it in equity belonged to her. He testified further that the lands described, with the exception of the grantor's homestead, were paid for by the proceeds of drafts drawn in favor of Ada W. Lucas, and which, according to information derived from the husband of the latter, represented her interest in the estate of her father, who died some time previous thereto in the state of Iowa.

There is other evidence tending to prove the possession by Mrs. Lucas of property in her own right derived from the source above mentioned. It is also shown that after her removal with her husband to Pierce county, in the year 1871, she taught school a considerable part of each year, and that her earnings therefrom amounted to nearly, if not quite, $1,100, which, with the exception of about $200, was used to defray the expenses of the family. To Mr. Robertson, in a conversation two or three months before his death, Lucas stated that he had conveyed all of his property, real and personal, to his wife; that the purpose of such conveyance was to prevent a disposition thereof by the probate court, and that he preferred to dispose of it himself. The evidence of plaintiffs tends to sustain each of the propositions asserted by them, and would, it may be conceded, have supported a finding in their favor; but the district court having determined the issues in favor of the defendant, we can perceive no sufficient ground upon which to interfere.

The doctrine has been freely asserted by this court that the deed of a husband to his wife, although void at common law, will be upheld whenever equitable grounds exist therefor, such, for instance, as a valuable consideration. (*Smith v. Dean*, 15 Neb., 432; *Johnson v. Vandervort*, 16 Neb., 144; *Furrow v. Athey*, 21 Neb., 671; *Ward v. Parlin*, 30 Neb., 376; *Hill v. Fouse*, 32 Neb., 637.) In *Furrow v. Athey*, a case quite similar to the one before us, the court, by REESE, J., after holding the money received by the grantor from his wife's separate estate to be a sufficient consideration for the deed to her, says: "But aside from this we can see no reason why the decree of the district court is not correct. It appears that in 1868 Charles Furrow, the husband, now deceased, purchased the land in question from the United States. At that time he with defendant, his wife, settled upon it and resided there together until his death, which occurred in 1880. In 1879, while in

poor health, he conveyed the premises to her. It was their home. They had a family of children, the plaintiffs, and the deed was evidently executed to her in order that she might be enabled to rear and educate the family, in which she was as much interested as the husband, and which he fully understood at the time he made the conveyance. If it had been made to a third party as a trustee, and by him conveyed to defendant, it perhaps would never have been questioned. It is just as good without such intervention." The foregoing language is quite as applicable to the facts of the case as found by the district court, and must be regarded as decisive of the question under consideration.

It is alleged by defendant, and not seriously disputed, that 160 acres of the premises in controversy, to-wit, the south half of the northwest quarter and the north half of the southwest quarter of section 35, was in the deed of R. S. Lucas by mistake described as the corresponding subdivision of section 34. Plaintiffs' counsel treat the answer as an application for a reformation of said deed, although we find no prayer therefor, and argue that such relief should be denied for two reasons: (1.) The conveyance from R. S. Lucas was purely voluntary and will accordingly not be corrected by a court of equity without the consent of all parties interested. (2.) The defendant's claim comes too late after an interval of thirteen years. Referring to the first contention, it is sufficient to say that the district court, as we have seen, evidently found that the money received by Lucas from his wife's separate estate was a sufficient consideration for the conveyance, and that it cannot be regarded as voluntary within the meaning of the authorities to which we are referred by counsel. As to the second contention, it may be said that Mrs. Lucas took possession of the 160 acres in question soon after the death of her said husband, and asserted title thereto continuously until the time of her death, more than ten years later. In the year 1884, in an action in the district court of Pierce

county in which the said Ada W. Lucas, then Seeley, was plaintiff and Woods Cones, administrator of the estate of the said R. S. Lucas, was defendant, a decree was entered correcting said deed so as to include the property above described in section 35. It is claimed, and may be conceded, that the decree mentioned is void as against the heirs of the said R. S. Lucas. The fact of the decree is, however, material, as bearing upon the contention that said claim is now too stale for cognizance by a court of equity. *Johnson v. Vandervort, supra,* relied upon by plaintiffs in this connection, is not in point: (1.) Because there was therein no consideration or other equitable grounds upon which to sustain the conveyance. (2.) There was no attempt by the wife to assert any claim of title or otherwise under the deed for more than seventeen years after its execution. We have no doubt that Mrs. Lucas, had she survived, might successfully interpose her equitable title as a defense to an action of like nature by these plaintiffs. (*Dale v. Hunneman*, 12 Neb., 221; *Staley v. Housel*, 35 Neb., 160.) And her title at the date of the lease is available to the defendant in this action.

There is a further contention, viz., that the defendant failed to perform the conditions of the lease by the furnishing of vegetables and other provisions to Mrs. Lucas as stipulated therein, and that he must therefore be "deemed holding over his term." (Civil Code, sec. 1021.) It does not appear, however, that any complaint was ever made by the party most concerned during her lifetime, and the terms and conditions of the lease or the manner of their performance cannot, for the purpose of this action, be of interest to the plaintiffs, since they claim through their father, R. S. Lucas, and in effect disclaim any title derived through their mother. The judgment must, for reasons stated, be

AFFIRMED.