(No. 14280.—Reversed and remanded.)

JAMES EGAN *et al.* Appellants, *vs.* MICHAEL EGAN *et al.*
Appellees.

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

1. DEEDS—*acceptance of deed must be proved or presumed in order to pass title.* Acceptance of a deed is essential to pass title, and in the absence of proof of acceptance by the grantee or circumstances sufficient to raise a legal presumption of acceptance the title does not pass.

2. SAME—*when acceptance of a deed is not presumed.* There may be a presumption of acceptance of a deed in case of a grantee not *sui juris* or where a voluntary conveyance is beneficial to the grantee, but such a presumption cannot exist where the deed imposes a duty or obligation on the grantee, such as a personal obligation for future support of the grantor.

3. SAME—*when deed is not good as to an undivided one-half interest.* A deed made by a mother to two of her sons as tenants in common, upon consideration of one dollar and the assumption by them of the obligation to support and care for the grantor during her life, is without effect as to an undivided one-half interest in the property, where one of the sons repudiates the transaction and does not accept the deed.

4. SAME—*when deed from mother to her sons is obtained by fraud—fiduciary relation.* The mere relationship of mother and son does not constitute a fiduciary relation which will raise a presumption of fraud in the case of a deed made by a mother to two of her sons, but fraud and undue influence will be inferred where the evidence shows that all of the children of the grantor had contributed to the purchase and improvement of the property conveyed, whereas she was led to believe that only the two grantees had paid the consideration.

APPEAL from the City Court of Sterling; the Hon. C. E. SHELDON, Judge, presiding.

WOLFERSPERGER & STAGER, for appellants.

ARTHUR G. BUSH, and C. C. & J. W. JOHNSON, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Margaret Egan died on March 9, 1919, intestate, leaving as her heirs-at-law the appellants, James Egan, Thomas Egan, Sadie Vock and Anna Kirby, and the appellees, Michael Egan and John Egan. The appellant James Egan was appointed administrator of her estate, and the appellants filed their bill in the city court of the city of Sterling against the appellees, alleging that at the time of her death Margaret Egan was the owner in fee simple of lots 1 and 2 in block 41 in Wallace's addition to the city of Sterling and the title descended to her heirs-at-law as tenants in common, and that the appellees had obtained a deed of the property from Margaret Egan without consideration and by means of undue influence. The bill prayed the court to set aside the deed and decree partition of the premises. An answer was filed in the names of the appellees, claiming title to the real estate by virtue of a conveyance made March 22, 1918, alleging that the deed was made in consideration of one dollar and other valuable consideration, consisting of the facts that at the time of the purchase of the premises, in 1885, and the conveyance to Margaret Egan on July 28, 1887, they furnished the money necessary to purchase the property, and that during the time she occupied the premises they had been to the entire expense of caring for the property, paying for repairs, taxes and all necessary expenses of maintaining the same and furnished her with her means of support. The issue was referred to the master in chancery, who took the evidence and returned the same with his findings that the deed was without consideration and void, and that it was not delivered and was procured by undue influence from Margaret Egan, then eighty-three years of age, and he recommended that the deed be set aside and partition ordered. The court sustained exceptions to the report and dismissed the bill for want of equity.

Margaret Egan lived in Sterling in 1885 and her husband was absent from home, so that the support of herself and family devolved upon her and her children. The family then consisted of her children: Dominic, an adult, who is now dead; Michael, about twenty years old; John, about eighteen years of age; Thomas, sixteen years old; Sadie, about fourteen years old; Charles, a year or two younger, who has since died; James, eleven years of age; and Ann, nine years old. She made a contract with William A. Sanborn for the real estate, of which $200 was paid at the time and the final payment was made in 1887, when the property was conveyed to her. In the spring of 1918 Michael came to Sterling from Davenport, Iowa, where he lived and was employed in the machine shop at the government arsenal, and called upon Jarvis Dinsmoor and informed him that his mother wanted to see him about closing up her matters. He informed the attorney of facts which were afterward recited in the deed, a copy of which is given below. The attorney went to see Margaret Egan, and she assented to what Michael had stated, and said that she wanted to make a disposition of the lots to her sons Michael and John, and that they had taken care of her and would do that in the future. The attorney advised her that the best way was to make a deed, and he prepared a draft for a deed as follows:

"*Know all men by these presents:* Whereas lots one (1) and two (2), block forty-one (41), Wallace's addition to the city of Sterling, Whiteside county, Illinois, were conveyed on July 27, 1887, by William A. Sanborn to Maggie Egan in consideration of six hundred ($600) dollars paid to said Sanborn by Michael Egan and John Egan, sons of said Maggie Egan; and whereas the said sons requested the said Sanborn to execute the said deed to their mother for her special benefit; and whereas I, their mother, do now desire to put the title of said lots into my two sons, who originally paid for the same:

"Now, therefore, I, Margaret Egan, (formerly called Maggie, now a widow, and mother of said Michael and John Egan,) in consideration of the premises and one dollar in hand paid, the receipt of which is hereby acknowledged, do grant, bargain, sell and convey, and by these presents have granted, bargained, sold and

conveyed, to my two sons Michael F. Egan and John Egan, their heirs and assigns, forever, all my right, title and interest, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Illinois in and to lots one (1) and two (2), block forty-one (41), Wallace's addition to the city of Sterling, Whiteside county, Illinois.

"This deed is made on the further consideration that my said two sons will continue to care for and support me during the remainder of my natural life, as they have done in the past."

The attorney explained the deed to Margaret Egan and she signed it with her mark and acknowledged it and the attorney filed the deed for record, and when it was returned to him sent it to the cashier of the State Bank in Davenport for Michael Egan. Dinsmoor exercised unusual care and prudence in the preparation of the deed so as to show the exact nature of the transaction and not leave the consideration to evidence outside of the deed.

Michael Egan testified that when a boy he drove cows to pasture for pay and afterward worked on a farm for several years; that he gave his earnings to his mother; that $150 of his money was paid out of his earnings toward the purchase of the property; that a two-story addition was built to the house on the premises about 1891, while he was living at Omaha, Nebraska; that he helped to fix up the addition and furnished her about all the money he earned that summer; that he built a barn that cost $150, moved in dirt and filled up the lot, put up a chicken house, and a fence around the property; that he estimated he paid $200 toward the addition for carpenter work and plastering; that when he came to Sterling he talked to his brother John about getting a deed to them and asked him what he thought about it and said that was where it ought to go, and John replied that he thought the same. The uncontradicted evidence was that all the children worked as soon as they were able to earn anything and gave their earnings to their mother. Michael being the oldest after the death of Dominic, he probably contributed more in the early years to the common fund than the younger children, but his tes-

timony was contradicted by every one of the other living children as to his paying for improvements on the property.

In any view of the evidence the decree was wrong as to an undivided one-half of the title. The deed purported to convey the premises to Michael Egan and John Egan as tenants in common, and John testified that his mother had proposed to deed the place to him because he was the one who stayed at home the longest, but he declined and advised her to sell it and use the money and if anything was left at her death the heirs could have it; that Michael came to him before the deed was made and said their mother was going to deed the place to them and John should go over and get the attorney to come up, and he replied that he would not do it. He repudiated the whole transaction and every part of it, and said that he did not file any answer in the suit and did not sign one or authorize anyone to answer for him. An acceptance of a deed is essential to pass title, and in the absence of proof of acceptance by the grantee, or facts or circumstances sufficient to raise a legal presumption of acceptance, the title does not pass. (*Dale* v. *Lincoln*, 62 Ill. 22; *Weber* v. *Christen*, 121 id. 91; *Pratt* v. *Griffin*, 184 id. 514; *Dagley* v. *Black*, 197 id. 53.) There may be a presumption of acceptance in the case of a grantee not *sui juris* or where a voluntary conveyance is beneficial to the grantee, but such a presumption cannot exist where the deed imposes a duty or obligation on the grantee. (*Hill* v. *Kreiger*, 250 Ill. 408; *Sellers* v. *Rike*, 292 id. 468.) In this case John Egan was an adult. The deed imposed a personal obligation for future support and it was not delivered to him or anyone authorized to accept it for him, and the title to the undivided one-half did not pass.

As to the other undivided one-half, it is clear from the recitals of the deed that Margaret Egan had no intention of conveying the premises except to her two sons as tenants in common and upon a consideration that John, jointly with Michael, should support her in the future. It cannot be as-

sumed that she would have made the deed unless she had the obligation of both for her support, which might be of very great importance. As is quite common in family quarrels the testimony took a very wide range, a great deal of it relating to the question whether Michael performed his obligation by furnishing his mother with proper support. The deed was made March 22, 1918, and in July, 1918, Michael went to Sterling and took his mother to Davenport and then to the home of his grand-daughter, Mary Hunter, in Moline, on July 16, 1918. She lived with Mrs. Hunter until December 28, 1918, and during that time Michael paid different sums of money to Mrs. Hunter. In December, 1918, he secured a second-story apartment above the I. and I. railroad station in Davenport, consisting of three rooms, and took his mother there. She lived about two months with him and became sick and was taken to the hospital, where she died in a few days. The consideration for support in the future was personal to Margaret Egan, and there are cases where a failure to support will justify an inference of fraud in procuring a conveyance, but Margaret Egan did not repudiate the deed for want of proper support although she expressed her regret at having made it. The recital in the deed that the grantees had paid for the premises and the deed was made to their mother at their request and that they had cared for and supported her in the past was false, and it originated with Michael in his statement to the attorney. Margaret Egan had a right to make a gift to her sons if she saw fit to do so, free from any undue influence, and the mere relationship of mother and son did not constitute a fiduciary relation which would raise a presumption of fraud. (*Francis* v. *Wilkinson,* 147 Ill. 370; *Kellogg* v. *Peddicord,* 181 id. 22; *Bishop* v. *Hilliard,* 227 id. 382.) Michael lived in Davenport and his mother did not live with him or rely upon his advice or assistance, and there was nothing except the family relation to establish a fiduciary relation. It was therefore nec-

301—9

essary to prove some fraud or influence not legitimately and honestly acquired. Such fraud and undue influence are not ordinarily susceptible of direct proof but must be inferred from circumstances justifying the conclusion that they were exercised. Margaret Egan was made in some way to believe that Michael and John had paid the consideration of $600 to Sanborn and had requested Sanborn to execute a deed to her. The natural inference is that this belief was brought about contrary to the fact by unlawful means and not by proper and legitimate influence honestly acquired.

For all the reasons stated we conclude that the deed was invalid and should be set aside, and the decree is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*