Aultman, Taylor & Co. v. Obermeyer.

AULTMAN, TAYLOR & CO., APPELLANTS, v. WILLIAM OBER-
MEYER AND WIFE APPELLEES.

1. **Husband and wife:** DEED. In the year 1870, a husband and wife owning lands in severalty, in the state of Wisconsin, sold the same, the husband receiving the money therefor, which, on removing to this state in the spring of that year, he deposited in his own name in a bank in the city of Lincoln. Afterwards, with the knowledge and consent of his wife, he purchased certain lands and paid for the same with the money in question, and took the deed in his own name. In the year 1875 the husband made a deed to his wife for the lands in controversy. *Held*, that the deed was absolutely null and void at law.

2. ———: ———. When it is apparent that such a deed has been made in pursuance of a valid antenuptial agreement, or upon a sufficient consideration, it may be sustained in equity.

3. ———: ———. By the common law neither husband nor wife could convey lands to each other. And our law still regards them, in relation to each other, as one person, notwithstanding the statutes enlarging the rights of the wife.

4. ———: TRANSACTIONS BETWEEN THEM. Transactions between husband and wife in relation to the transfer of property from one to the other, by reason of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and the *bona fides* of such transactions will have to be established beyond question in order to be sustained by a court of equity.

5. ———: COMMON LAW IN FORCE. The common law in respect to the rights of husband and wife is in force in this state, except so far as it has been modified by statute.

APPEAL from the district court of York county.

The plaintiffs Aultman, Taylor & Co., recovered judgment against the defendants in the probate court of York county for the sum of $438.79, and caused a transcript thereof to be entered in the district court. Execution issued, and after a levy and sale of some property there remained a balance due of $384.77. Alias

execution issued and levy made upon the north-west quarter of section fourteen in township ten north, of range one west, and returned "not sold for want of bidders." Plaintiffs then commenced this action in the district court, alleging that the land so levied upon was in the name of defendant's wife, having been conveyed to her by her husband William, during the pendency of the action against him in the probate court, with the intent to hinder, delay, and defraud his creditors, whereby the said plaintiff was unable to sell the same to satisfy the balance remaining due on his said judgment. Plaintiffs prayed that said deed should be canceled, set aside, etc. 'Upon a trial before GASLIN, J., sitting in the district court for York county, Mrs. Obermeyer testified that in 1852 she received a legacy of $400 from her mother, and that about ten years ago she received a legacy of $600 from her mother-in-law; that part of this money she allowed her husband to use in a store; that she invested a portion of this money in wild lands in Wisconsin; that her husband also owned forty acres of land in Wisconsin; that in 1870 they sold such lands and all of their property in the state of Wisconsin and deposited the proceeds in the State National Bank of Lincoln, Nebraska, to the amount of $7,000, such deposit being made in William's name; that the real estate in controversy was bought with her own funds; and that the conveyance to her by her husband was a payment of the money she allowed him to use.

Plaintiffs introduced one witness who testified that he was present at the time of the execution of the deed by William's grantor; that Mrs. Obermeyer was present and saw said land deeded directly to her husband. One John Allen, a justice of the peace, testified that defendant William, while Mrs. Obermeyer was present, for the purpose of testifying as her bondsman in an appeal case from the decision of said Allen, stated on oath in

the presence of his wife that he was the owner of the land in controversy.

A decree was rendered below in favor of defendants, and plaintiffs appeal.

*Edward Bates*, for appellants.

The Obermeyers'.testimony shows that they came to Nebraska and became residents of this state in the year 1870, and at that time they had sold all their property in Wisconsin, and deposited the proceeds in the State National Bank at Lincoln, Nebraska, in the name of the husband. This was an appropriation and reduction by the husband, of the wife's separate property to his own use (if, from their own testimony, she ever had any such property). The husband reduced this property to his possession in this state under the common law rule, as the Married Woman's Act did not take effect until June 1st, 1871. [Laws of 1871, Page 78.] It would be "impairing the obligation of a contract," to divest the husband of this property now. *Westervelt v. Gregg*, 12 N. Y., 202.

The statutes of June 1st, 1861 [Laws 1871, Page 68], and the Act approved Feb. 25th [Laws of 1875, Page 88], do not abrogate the common law rule so that a husband can convey real estate directly to his wife, especially in any case where it is against the interest of the creditors of the husband. *Fletcher v. Mansur*, 5 Ind., 267. *White v. Wager*, 25 N. Y., 328. [The case of White v. Wager is decided upon a statute similar to ours.] *Farrell v. Patterson*, 43 Ill., 52. *Thomas v. Chicago*, 55 Ill., 403.

The conveyance of the land in question from the husband to the wife, as shown by the testimony, is voluntary and without consideration. The recitals in the deed are conclusive of this. Bump on Fraudulent Con-

veyances, 317 and 318. *Lyne v. Bank*, 5 J. J. Marsh, 545.. *Hurdt v. Courtenay*, 4 Met. (Ky.) 139. *Farmers Bank v. Long*, 7 Bush., 337. *Winter v. Walter*, 37 Penn. State, 155

*R. E. Knight*, for appellees.

MAXWELL, J.

Section one of the act "respecting the rights of married women," approved March 1, 1871, provides that: "The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property which came to her by descent, devise, or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband, or liable for his debts."

In 1875 this section was amended by adding after the word "husband," in the sixth line, the words "or she shall acquire by purchase or otherwise."

At common law those chattels which formerly belonged to the wife are by act of law vested in the husband, with the same degree of property and with the same powers as the wife, when sole, had over them." This depends entirely on the notion of a unity of person between the husband and wife, it being held that they are one person in law, so that the very being and existence of the woman is suspended during the coverture, or entirely merged or incorporated in that of the husband. And hence it follows, that whatever personal property belonged to the wife before marriage is by marriage absolutely vested in the husband. In a real estate, he only gains a title to the rents and profits during the coverture; for that, depending upon feudal prin-

ciples, remains entire to the wife after the death of her husband, or to her heirs, if she dies before him, unless, by the birth of a child, he becomes tenant for life by the curtesy.    But in *chattel interests* the sole and absolute property vests in the husband, to be disposed of at his pleasure, if he chooses to take possession of them; for unless he reduces them to possession, by exercising some act of ownership upon them, no property vests in him, but they shall remain to the wife, or to her representatives, after the coverture is determined." 2 Black. Com., 433.

The common law in respect to the rights of husband and wife is in force in this state, except so far as it has been changed by statute.    The second section of the act " respecting the rights of married women " provides that : " A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same, in the same manner, to the same extent, and with like effect, as a married man may in relation to his real and personal property."

By the common law neither the husband nor wife could convey lands to each other.    And our law still regards them in relation to each other as one person, notwithstanding the statute enlarging the rights of the wife. *Fowler v. Trebein*, 16 O. S., 498. *White v. Wager*, 25 N. Y., 328.    *Winans v. Peebles*. 32 N. Y., 423.

The conveyance which Obermeyer attempted to make directly to his wife in law was absolutely void.    Where it is apparent that such a deed has been made, in pursuance of a valid ante-nuptial agreement or upon a sufficient consideration, it might be sustained in equity. But in this case, if we take the most favorable view of the evidence possible for the defendants, that the money in question was derived from the sale of lands owned by the wife, still it is clearly shown that in the year 1870 the

husband had reduced this money to his possession, and had retained possession thereof until the time he purchased the land in controversy. But in our opinion the proof fails to establish the fact that the money with which this land was purchased was derived from the sale of lands belonging to the wife. Transactions between husband and wife in relation to the transfer of property from one to another, by reason of which creditors are prevented from collecting their just dues, will be scrutinized very closely, and the *bona fides* of such transaction will have to be established beyond question, in order to be sustained by a court of equity. The judgment of the district court is reversed, and a decree rendered in favor of the plaintiff.

DECREE ACCORDINGLY.