| 26 | 689 |
| 49 | 633 |

M. O. CALLENDER ET AL., PLAINTIFFS IN ERROR, V. MARY J. HORNER, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

1. **Husband and Wife.** In an action by attachment against a husband, the wife brought an action of replevin and recovered possession of the goods and had judgment in the court below. It appeared that the parties had formerly lived in Iowa and were possessed of a valuable farm and considerable personal property; that there was a first mortgage on the farm of from $8,000 to $9,000, also a second mortgage for more than $2,000, and chattel mortgages to the latter party on the personal property. The land was sold under the first mortgage and redeemed by the second mortgagee, who thereupon foreclosed his chattel mortgages and purchased the property, and after satisfying his own claim, delivered the surplus to the wife. *Held*, No fraud being charged or proved in the premises, that the wife took a good title as against the creditors of the husband.

2. ———. The fact that the husband lists his wife's property for assessment in his own name, or even pays the taxes thereon, is not conclusive that he is the owner of the property.

ERROR to the district court for Boone county. Tried below before TIFFANY, J.

*Robertson & Campbell*, and *C. L. Harris*, for plaintiffs in error.

44

*James S. Armstrong, Geo. W. Brown,* and *Harwood, Ames & Kelly,* for defendant in error.

MAXWELL, J.

This is an action of replevin brougnt by the defendant in error against the plaintiffs in error to recover possession of certain personal property levied upon as the property of Robert Horner, under a writ of attachm⌐ ⸱ by Callender as constable, in an action wherein the McCormick Harvesting Machine Company was plaintiff, and Robert Horner defendant. On the trial of the cause, a jury was waived and the cause tried to the court, which found the right of property and right of possession in the defendant in error, and rendered judgment accordingly. The testimony shows that the defendant in error is the wife of Robert Horner; that the note on which the attachment proceedings are based is for the sum of $195, due in one year from date, and is dated October 1, 1884. The testimony also shows that Robert Horner formerly resided in Clinton county, Iowa, where he was the owner of 280 acres of land; that there was a mortgage on this land to one Briggs for a very large amount; that Horner was also indebted to one Coan for a sum in excess of $2,000; that part of this sum was secured by a neighbor of Horner as indorser, but whether this neighbor was possessed of property or not does not appear, nor is it material; that Horner and wife, to secure the amount due Coan, executed a second mortgage on the land to him, and also a chattel mortgage on all their personal property; that in the year 1882 Briggs foreclosed his mortgage on the land, the amount due thereon being between $8,000 and $9,000, and the land was sold under the foreclosure; that before the expiration of the year in which parties interested might redeem, Coan redeemed the land from the Briggs foreclosure; that he thereupon foreclosed his chattel mortgages, and all the personal property mortgaged seems to have

been sold under this foreclosure; but the testimony on this point is not very clear.. Coan, however, after satisfying his own claim in full, turned over the remainder of the property to the wife, (defendant in error.) On this point she testifies on cross-examination: "I got it [the property in question] from W. F. Coan."

Q. State where Coan got it, if you know.

A. When our place ran behind, and was in debt, Mr. Coan told me he·would save me a divide of the property. Mr. Coan took a mortgage on the property and got it.

Q. How did you get the property from Coan?

A. Well, his sons came out and were there on the day of sale, and allowed me so much for my share.

Q. What, if anything, did you pay Coan for this property?

A. That was my divide of my husband's property.

Q. Did you pay any money to Mr. Coan for this property?

A. No, sir.

Q. Did you give him any other consideration for it?

A. Yes, sir; he had a hold of our property.

Q. What property was the mortgage you speak of. to Mr. Coan?

A. On land, horses, and cows, and machinery; everything only house furniture.

Q. Was this property all covered by one mortgage?

A. Yes, sir; all but six head of horses.

Q. Did you sign all of these mortgages?

A. Yes, sir.

Q. When you speak of your divide in the property, Mrs. Horner, what do you mean? State fully.

A. Share of my husband's property.

Q. Then prior to Coan's foreclosure your husband owned this property, did he not?

A. Yes, sir.

Redirect:

Q. All of this property was mortgaged to Mr. Coan?

A. Yes, sir.

Q. The mortgage was foreclosed by Mr. Coan, was it not?

A. Yes, sir.

Q. The property was sold and bought in by Mr. Coan, was it not?

A. Yes, sir.

Q. After the property mentioned in this complaint was sold on chattel mortgage and purchased by Mr. Coan, what became of it?

A. He gave me it for my divide.

The examination fails to make clear what was meant by the "divide" she speaks of. We are left to infer, however, that the land mortgaged was the homestead, and that by surrendering that she was promised the surplus after paying the mortgage debts; or perhaps Mr. Coan may have turned over the surplus to her as the equitable owner after paying his claim. Mr. Coan's testimony was not taken. No fraud is charged against him or against the defendant in error, in that transaction, and we cannot infer it. The presumption is that she obtained the property honestly, and there must be some proof offered to overcome this presumption to authorize a court to declare the transaction fraudulent. So far as the testimony shows, the property had been transferred to Coan to pay the debts of the husband, and the return of a part of the property to the wife was either in consideration of the surrender of some right, as that of homestead, or from a sense of justice on the part of Coan. In addition to this, most of these transactions seem to have taken place before the debt to McCormick had been incurred.

One of the principal points relied upon by the plaintiffs in error, is the fact that for a year or two before the bringing of the attachment suit, Robert Horner had listed the prop-

erty to the assessor in his own name. This, however, is a mere circumstance, and by no means shows that he is the owner of the property. The husband may have been, and probably was, in the habit of transacting business for his wife, and paying the taxes on her property, and instead of listing the property in her name, had caused the same to be listed in his own. This, taken in connection with other facts, might be sufficient to show that he was the owner; but standing alone it is not.

Upon the whole case it is apparent that the judgment is sustained by the clear weight of evidence, and it is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.