CLARK WARD ET AL. V. PARLIN ET AL.

[FILED SEPTEMBER 18, 1890.]

1. **Evidence:** TRIAL TO COURT: IMMATERIAL TESTIMONY. Following the cases of *Willard v. Foster*, 24 Neb., 213, and *Richardson v. Doty*, 25 Id., 424, *held*, that a cause tried to the court without a jury will not be reversed for the admission of immaterial testimony.

2. **Pleading:** AMENDMENT. *Held*, That the permitting of the plaintiffs to amend their petition on the trial was not an abuse of discretion.

3. **Husband and Wife:** CONVEYANCES BETWEEN. A husband may lawfully give his wife a deed or mortgage to secure a pre-existing *bona fide* debt owing to her, and such conveyance is not fraudulent as to his other creditors, if taken in good faith, and without any fraudulent purpose.

4. ——: ——: FAILURE TO RECORD. The failure of the wife to immediately record her conveyances does not estop her from claiming under them, when it appears that the plaintiffs were not misled, or in any manner prejudiced by her neglect.

ERROR to the district court for Red Willow county. Tried below before COCHRAN, J.

*S. R. Smith*, for plaintiffs in error, cited: *First Nat'l Bank of Omaha v. Bartlett*, 8 Neb., 319; *Van Deuzer v. Peacock*, 11 Id., 245; *Dice v. Irwin*, 11 N. E. Rep. [Ind.], 488; *Chapman v. Summerfield*, 14 Pac. Rep. [Kan.], 235; *Gerald v. Gerald*, 6 S. E. Rep. [S. Car.], 290; *Hoes v. Boyer*, 9 N. E. Rep. [Ind.], 427; *Kennedy v. Powell*, 34 Kan., 22; *Rudershausen v. Atwood*, 19 Ill. App., 58; *Payne v. Wilson*, 41 N. W. Rep. [Ia.], 45; *Popendick v. Frobenius*, 33 N. W. Rep. [Mich.], 887; *Dull v. Merill*, 36 Id., 677; *Rockford Boot & Shoe Co. v. Mastin*, 39 N. W. Rep. [Ia.], 219; *Buhl v. Peck*, 37 N. W. Rep. [Mich.], 876; *Miller v. Krueger*, 13 Pac. Rep. [Kan.], 641; *Bailey v. Kan. Mfg. Co.*, 32 Kan., 73; *Clemens v. Brillhart*, 17 Neb., 336; *Hedge v. Glenny*, 39 N. W. Rep. [Ia.], 818; *Citizens Nat'l Bank v. Webster*, 41 Id., 47; *Wooden v. Wooden*, 40 N. W. Rep. [Mich.], 460; *Moorman v. Gibbs*, 39 N. W. Rep. [Ia.], 832; *Cornel v. Gibson*, 16 N. E. Rep. [Ind.], 130; *Tomlinson v. Mathews*, 98 Ill., 178.

*Rittenhouse & Starr*, contra, cited: *Willard v. Foster*, 24 Neb., 213; *Richardson v. Doty*, 25 Id., 424; *Hedges v. Rooch*, 16 Id., 674; *Brown v. Rodgers*, 20 Id., 547 *Grimes v. Sherman*, 25 Id., 843.

NORVAL, J.

This action was brought in the court below to set aside, as fraudulent, deeds of transfer from Clark Ward to Sarah J. Ward, his wife, of lots Nos. 23 and 24, in block 38, of the town of Indianola, and lots Nos. 2 and 3 of block 8 of Springdale addition to the town of Bartley.

The plaintiffs alleged that on September 5, 1888, they had judgment in the county court of Red Willow county,

against Clark Ward, for the sum of $986.60, and $6.35 costs of suit; that a transcript of said judgment was filed with the clerk of the district court of said county, upon which execution was issued September 5, 1888, to the sheriff of said county, and duly served and returned "*Nulla bona*," but which was levied upon the real estate above described, which, on the 13th day of August, 1888, prior to plaintiffs' judgment, had been conveyed by the judgment debtor to his wife without consideration, and for the purpose of hindering and defrauding the plaintiffs and other creditors of Clark Ward; that the deed therefor was filed for record on September 6, following, and subsequent to the date of the filing of the transcript of plaintiffs' judgment and issuing the writ of execution; that at the same time the defendant Clark Ward filed instruments of conveyance to all his personal property, dated back at various times prior to the rendition of the judgment, which property, if free from incumbrance, is worth about $1,500, but by reason of said fraudulent conveyance from Clark Ward to his wife rendering the title acquired by the purchaser at a sale under the execution uncertain, and prevents it being sold at a fair price.

The prayer is for the cancellation of the conveyance from Clark Ward to his wife, that the lots be sold and the proceeds applied to the satisfaction of plaintiffs' judgment.

The defendants answered, admitting the judgment, the filing of the transcript in the office of the clerk of the district court, and the making of the conveyances to the real estate. The defendants for further answer deny that the conveyances described in the petition were given without consideration, but were given for a good, valid, and subsisting consideration, were made in good faith and without any intention of hindering, delaying, or defrauding the plaintiffs or any other creditors; deny that Clark Ward is insolvent, and that the conveyances of personal property named in the petition were dated back, but aver that they

were made at the time they bear date. The answer further states that part of the property mentioned in the petition was purchased with the sole and separate money of the defendant Sarah J. Ward; that the conveyance was made to Clark Ward through a mistake, and that all the property transferred from said Clark Ward to his wife, was in payment for money previously loaned by Sarah J. Ward to Clark Ward, and prior to the contracting of the debt on which plaintiffs' judgment was rendered.

The reply was a general denial.

A trial was had to the court, with a decree for the plaintiffs, setting aside the conveyance, and subjecting the real estate, set forth in the petition, to the payment of plaintiffs' judgment.

The defendants' motion for a new trial was overruled and the case was brought to this court for review on eight assignments of error. The first, second, third, and fifth errors are based upon the rulings of the court in admitting evidence claimed to be incompetent and immaterial.

The rule is established in this state, that when a cause is tried to a court without a jury, the admission of incompetent evidence on the trial will not be sufficient grounds for reversing the case. (*Willard v. Foster*, 24 Neb., 213; *Richardson v. Doty*, 25 Id., 424.) We have, however, examined each of the rulings complained of, and find the evidence material and competent.

The fourth assignment of error is that the court erred in allowing the plaintiffs to amend their petition. Upon the trial the plaintiffs offered in evidence the deed from Clark Ward to Sarah J. Ward, for lots 23 and 24, in block 38, in the town of Indianola. The defendants objected to its introduction, as not covering the property in controversy. The lots were described in the petition as being in block 28, and the court permitted the petition to be amended, by interlineation, by changing from block 28 to block 38. The amendment was in furtherance of justice, and there

was no abuse of discretion in permitting the pleading to be changed. (*Hedges v. Roach*, 16 Neb., 674; *Brown v. Rogers*, 20 Id., 547.)

The remaining errors assigned are that the judgement is not sustained by sufficient evidence, the judgment is contrary to law, and error in overruling the plaintiffs' motion for a new trial.

The defendant Clark Ward was a dealer in agricultural implements at Indianola, and on the 29th day of October, 1887, gave to the plaintiffs his promissory note for $951.30, on which judgment was rendered in the county court of Red Willow county, on September 5, 1888, for $986.60. A transcript of the judgment was filed on the following day in the district court of that county, an execution was issued thereon and placed in the hands of the sheriff, who indorsed the same "no goods," and levied the writ upon lots 23 and 24, in block 38, in the town of Indianola, and on the south half of lot 2 and the north half of lot 3, in block 8, Spring Dale addition to the town of Bartley. On the 13th day of August, 1888, Clark Ward conveyed by warranty deed the Indianola lots to Sarah J. Ward, the consideration expressed therein being $800, and on the same day Ward made a quitclaim deed to the lots in the town of Bartley to his wife. Those deeds were filed for record September 6th, 1888. The following instruments were put in evidence by the plaintiffs: A bill of sale from Clark Ward to Sarah J. Ward, dated January 7, 1888, for thirty-four horses and twenty yearlings and colts; a chattel mortgage from Clark Ward to his wife, dated May 9, 1888, on certain farm machinery, to secure $340; a chattel mortgage from Clark Ward to the First National bank of Indianola, dated September 5, 1888, on his entire stock of agricultural implements, to secure the sum of $2,829.20; a chattel mortgage from Clark Ward to M. D. Welch, dated September 6, 1888, on three hundred head of cattle and his stock of agricultural implements, to secure

a note of $1,255, and also a bill of sale from Clark Ward to his wife, dated October 20, 1888, on a jack, subject to two other mortgages. All of these instruments were filed September 6, 1888, except the last bill of sale, which was filed October 20, 1888.

Leander Starbuck testified that while the execution was in his hands for service, he asked Clark Ward if he had any property to turn out on the note; he replied that there was personal property on his place, but it was in such shape that the officer could not get it, and that he had no real estate that could be levied on.

W. S. Starr testified, in substance, that he had for collection the claim, on which the judgment was afterwards rendered, and about August 20, 1888, before bringing suit for the plaintiffs in the county court, he had a conversation with Mr. Ward in which Ward proposed to secure the claim by a mortgage on the lots in Bartley and Indianola, stating that they belonged to him individually, were free from incumbrance, and he had no other property which he could turn out to secure the claim. Starr replied that he would not take mortgages without consulting with the plaintiffs, and that he wrote them and they replied not to accept the proposed security. Mr. Starr further testified that Mr. Ward told him that the claim was secured by collateral notes amounting to $1,300, and that if the plaintiffs would accept a mortgage and extend the time for six months he thought he would be able to collect the collaterals and pay by that time. But a small amount of the collateral notes have been paid and the bulk of them are worthless.

Harlow W. Keyes testified that about August the 1st, 1888, Mr. Ward stated to him that he had plenty of property and of ample value to pay all his indebtedness; that about the 14th or 16th of the same month, in another conversation, Mr. Ward said to him : "There is another matter that I desire to counsel with you in regard to. I

am owing one large note to a firm, and it is quite probable that you will receive it for collection. I would like your advice a little on the matter." My recollection is that I asked Mr. Ward what firm it was, or if it was one I had been doing business for, and he said it was Parlin, Orendorff & Martin Co. "I am owing something between $900 and $1,000, and I presume the note will be sent to you or some other attorney for collection." I then said, " Mr. Ward, if that note comes to me for collection of course I would be their attorney and not yours; I presume it will come to me, and if they order it sued I will be obliged to sue it." I asked him if he was having any trouble about any goods that he had bought, and he said " No, that it was a just indebtedness, but I have got collateral notes to secure it." He said there might be some way that I could prevent them suing with the collateral security—having the collateral security. I says, " I am quite positive that they could do that." He said that he didn't want to be sued, and that he desired to put the payment off as long as possible, until he could get his business matters straightened up; that he had ample property to pay all his indebtedness, but wanted time to straighten up his business. He said he was willing to secure the claim to get an extension of the time of payment.

Clark Ward, one of the defendants, being examined as a witness by the plaintiffs, testified that Sarah J. Ward was his wife, and that they were married in 1861.

We have given substantially all the testimony introduced by the plaintiffs. Both of the defendants were called and sworn as witnesses in their own behalf. It appears from their testimony, that Mrs. Ward has, ever since their marriage, had money and property in her own right, and frequently Mr. Ward borrowed money from her, some of which he had repaid. It is undisputed that she inherited from her mother's estate some land in Illinois, which was sold and the money loaned to her husband.

She sold some property in Canada in 1885, the proceeds of which, amounting to $1,200, were borrowed by Mr. Ward and used in his business. When Mrs. Ward came west she brought $5,000 in cash, which she deposited in the bank in her own name. Mr. Ward, in 1883, owned a ranch and dealt in stock. About this time he invested some $3,400 for his wife in horses, and put them on his ranch with nearly the same number he bought for himself. The Wards had separate brands and her stock were marked with her own brand. The proceeds arising from the sale of his wife's stock were paid to her. In 1884, all the horses purchased for Mrs. Ward the year before, were sold, excepting some twenty-three, and she received the money. Mrs. Ward owned stock to the amount of $500 in a mill, which was disposed of in 1886, and Mr. Ward used the money. She also owned in her own right a farm of 160 acres, on which she obtained a loan of $1,200 for her husband, he using the money in his business. The testimony discloses that he frequently borrowed money of her and did not always pay it back.

Each of the defendants testified that the bill of sale given in January, 1888, was to close up the horse deal, to settle for the twenty-three head of horses and increase, and that the chattel mortgages, and the deed to the Indianola property, were given as security for money borrowed by Mr. Ward from his wife.

In regard to the lots in Bartley, the undisputed evidence is that they were bought for her and paid for with her money, but through mistake the deed was made to her husband. The quitclaim deed from Mr. Ward to his wife was made to correct this mistake. There is no dispute but what the mortgages given by Ward to the First National Bank of Indianola, and to M. D. Welch, were given in good faith to secure actual *bona fide* debts. The plaintiffs offered no testimony in rebuttal. If the defend-

ants did not testify to the truth, there should not have been any difficulty in proving it.

We have read and scrutinized the evidence in this record with care, and it appears to us that the defendants' testimony is consistent and reasonable. We are convinced that Mrs. Ward acted in perfect good faith. True, she knew that her husband was being pressed by his creditors, and asked him to secure her. She had a perfect right to make good her claim, notwithstanding she knew she was being preferred to other creditors of her husband, if the security was accepted in good faith, and without any fraudulent purpose on her part. (*Hill v. Bowman*, 35 Mich., 191; *Jordan v. White*, 38 Id., 253; *Dice v. Irvin*, 11 N. E. Rep., 488; *Rockford Boot & Shoe Mfg. Co. et al., v. Mastin*, 39 N. W. Rep., 219; *Miller v. Krueger*, 13 Pac. Rep., 641; *Chapman v. Summerfield*, 14 Id., 235; *Cornell v. Gibson*, 16 N. E. Rep., 130.)

It is insisted that the conveyances were concealed by Mrs. Ward and kept from the records of the county until after the plaintiffs obtained their judgment, and for that reason they were fraudulent and void; there is no proof that they were purposely withheld from record. Besides the note, on which the plaintiffs took judgment, was given in October, 1888, long before any of the conveyances complained of were made. It does not appear that the plaintiffs extended credit to Mr. Ward on the faith that he was the owner of the Bartley property. In fact, there is no proof that this property was conveyed to Mr. Ward prior to his becoming the debtor of the plaintiffs. Parlin, Orendorff & Martin Co. therefore were not induced to become creditors by withholding the conveyance from record, nor were they in any manner prejudiced by the failure to record sooner. To create an estoppel the plaintiffs must have been misled by the conduct of Mrs. Ward. (*Payne v. Wilson*, 41 N. W. Rep. [Ia.], 45; *Citizens Nat'l Bk. v. Webster*, Id., 47.)

The decree of the district court is reversed and the cause is remanded for further proceedings.

JUDGMENT ACCORDINGLY.

THE other judges concur.