DAYTON SPICE-MILLS COMPANY V. WILLIAM G. SLOAN ET AL.

FILED NOVEMBER 18, 1896. No. 6406.

1. Continuance for Purpose of Procuring Incompetent Evidence: ATTACHMENT. The action of the trial court in denying an application for the continuance of a hearing on a motion to dissolve an attachment, examined and affirmed.

2. Review: ISSUES. A question which, apparently, was not presented to the trial court, but is raised for the first time in this court, need not be considered. (*Dunham v. Courtnay*, 24 Neb., 627.)

3. Fraudulent Conveyances: VALUE OF MORTGAGED CHATTELS. "The disproportion, if one exists, between the value of chattels mortgaged and the amount thereby secured affords no basis for a presumption of law. It is a matter of evidence, to be accorded such weight as, in the light of surrounding circumstances, it is entitled to receive in the determination of a question of fact." (*Grand Island Banking Co. v. Costello*, 45 Neb., 119.)

4. Husband and Wife: GIFTS. A gift of chattels from the husband to the wife, during coverture, *inter vivos*, could not be made and was of none effect at common law. The husband and wife were considered as but one person, and she was incompetent to receive the gift.

5. ———: COMMON-LAW RIGHTS. "The common law in respect to the rights of husband and wife is in force in this state, except so far as it has been modified by statute." (*Aultman v. Obermeyer*, 6 Neb., 260.)

6. **Married Women**: GIFT FROM HUSBAND TO WIFE. The married woman's act being for the purpose of extending, and not contracting or limiting, the rights of married women in this state, will not be held to have abrogated the equitable rule which upheld gifts from husbands to wives made when the husband was solvent, and which did not impair the existing rights of creditors.

7. ———: ———. "A husband may lawfully give his wife a deed or mortgage to secure a pre-existing *bona fide* debt owing to her, and such conveyance is not fraudulent as to his other creditors, if taken in good faith and without any fraudulent purpose." (*Ward v. Parlin*, 30 Neb., 376.)

8. **Limitation of Actions**: HUSBAND AND WIFE. The statute of limitations will not run in favor of strangers to a transaction against a claim due from a husband to his wife arising out of such transaction.

9. **Attachment**: ESTOPPEL. A plaintiff who has attached property as the property of defendants and obtained writs of garnishment to issue on allegations that the garnishee named has in his possession property, etc., owned by or belonging to the defendants, will not be heard to assert that defendants have not sufficient interest to be allowed to defend against the attachments.

10. ———: ORDER OF DISSOLUTION: DISMISSAL. The dissolution of an attachment issued on a claim before due terminates the action; and that a judge, at chambers, after dissolving such an attachment, made an order of dismissal of the main action, if without jurisdiction, and error (which we do not decide), was not prejudicial.

11. ———: ———. The evidence examined, and *held* sufficient to support the finding and order of the lower court.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.

The opinion contains a statement of the facts and issues.

*Horton & Blackburn*, for plaintiff in error:

The court erred in sustaining the motion of defendants to dissolve the attachment. (*Gans v. Thompson*, 11 O. St., 580; *Harrison v. King*, 9 O. St., 388; *Seidentopf v. Annabil*,

6 Neb., 524; *Monteith v. Bax*, 4 Neb., 171; *Weir v. Bell*, 3 Ex. Div. [Eng.], 238.)

References as to invalidity of the gifts: 8 Am. & Eng. Ency. of Law, 1320; *Flanders v. Blandy*, 12 N. E. Rep. [O.], 321; *Jackson v. Twenty-Third Street R. Co.*, 88 N. Y., 520; *Matthews v. Hoagland*, 21 Atl. Rep. [N. J.], 1054; *Brittain v. Crowther*, 54 Fed. Rep., 295; *Seitz v. Mitchell*, 94 U. S., 580; *McAnally v. O'Neal*, 56 Ala., 299; *Clinton Station General Merchandise & Mfg. Co. v. Hummell*, 25 N. J. Eq., 45; *Cramer v. Reford*, 17 N. J. Eq., 367; *Hamill v. Henry*, 69 Ia., 752; *Triplett v. Graham*, 58 Ia., 135; *Goldsmith v. Fuller*, 30 Neb., 569; *Swartz v. McClelland*, 31 Neb., 646.

The security given was so excessive as to constitute a ground of attachment. (*Morse v. Steinrod*, 29 Neb., 108; *Brown v. Work*, 30 Neb., 800; *Hershiser v. Higman*, 31 Neb., 531; *Thompson v. Richardson Drug Co.*, 33 Neb., 714; *Grime v. Farrington*, 19 Neb., 44.)

The attachment affidavit was not properly traversed. (*Hanson v. Doherty*, 25 Pac. Rep. [Wash.], 297; Bliss, Code Pleading, secs. 315, 332.)

A gift from husband to wife is subject to the debts of the former, though the debts were contracted subsequent to the making of the gift. (*May v. May*, 9 Neb., 19; *Gamber v. Gamber*, 18 Pa. St., 363; *Keeny v. Good*, 21 Pa. St., 349; *Walker v. Reamy*, 36 Pa. St., 410; *Bradford's Appeal*, 5 Casey [Pa.], 513; *Aurand v. Schaffer*, 7 Wright [Pa.], 363; *Robinson v. Wallace*, 3 Wright [Pa.], 129; *Switzer v. Valentine*, 4 Duer [N. Y.], 96; *Glann v. Younglove*, 27 Barb. [N. Y.], 480; *Woodbeck v. Havens*, 42 Barb. [N. Y.], 66; *Ryder v. Hulse*, 24 N. Y., 372; *Connors v. Connors*, 4 Wis., 112; *Elliott v. Bently*, 17 Wis., 591; *Edison v. Hayden*, 20 Wis., 715; *Duncan v. Roselle*, 15 Ia., 501; *Cramer v. Reford*, 17 N. J. Eq., 367; *Bergey's Appeal*, 60 Pa. St., 408; *Paine v. Mason*, 7 O. St., 207; *Day v. Munson*, 14 O. St., 491; *Atchison, T. & S. F. R. Co. v. Franklin*, 23 Kan., 74; *Rawson v. Pennsylvania R. Co.*, 2 Abb. Pr., n. s. [N. Y.], 220; *Knapp v. Smith*, 27 N. Y., 279; *Darby v. Callaghan*, 16 N. Y., 71.)

*Breckenridge & Breckenridge, contra:*

Plaintiff did not establish a ground of attachment. An action can be maintained on a claim not due only in the exceptional cases enumerated in section 237 of the Code. (*Caulfield v. Bittenger*, 37 Neb., 542; *Seidentopf v. Annabil*, 6 Neb., 524; *Harrison v. King*, 9 O. St., 393; *Heidenheimer v. Ogborn*, 1 Dis. [O.], 351.)

The attachment cannot be sustained because of excessive security. (*Whitney v. Levon*, 34 Neb., 443; *First Nat. Bank of Denver v. Lowrey*, 36 Neb., 290; *Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800; *Jones v. Loree*, 37 Neb., 816.)

The gifts were executed at a time when the donors were solvent, and they had the right to make provision for their wives. (*Sexton v. Wheaton*, 8 Wheat. [U. S.], 227; *Kehr v. Smith*, 20 Wall. [U. S.], 31; *Jones v. Clifton*, 101 U. S., 225; *Morse v. Raben*, 27 Neb., 145; *Second Nat. Bank v. Merrill v. Houston Iron Works Co.*, 50 N. W. Rep. [Wis.], 505.)

The gifts were perfected by actual delivery. (*Flanders v. Blandy*, 12 N. E. Rep. [O.], 321; *Matthews v. Hoagland*, 21 Atl. Rep. [N. J.], 1054; *Camp's Appeal*, 36 Conn., 88; *Davis v. Ney*, 125 Mass., 590; *Crittenden v. Phœnix Mutual Life Ins. Co.*, 41 Mich., 442.)

The notes were not barred by the statute of limitations. (*Barnett v. Harsbarger*, 105 Ind., 410; *Dice v. Irvin*, 110 Ind., 561.)

The indebtedness to the wives was valid, and they had a right to security. (*Ward v. Parlin*, 30 Neb., 376; *Hill v. Bowman*, 35 Mich., 191.)

A voluntary settlement in favor of a wife and children is not to be impeached by subsequent creditors on the ground of its being voluntary. (*Webb v. Roff*, 9 O. St., 430; *Fullington v. Northwestern Breeders' Ass'n*, 51 N. W. Rep. [Minn.], 475.)

Reference was also made to the following cases: *Cox v. Peoria Mfg. Co.*, 42 Neb., 660; *First Nat. Bank of Omaha v.*

44

*Bartlett*, 8 Neb., 319; *Sommermeyer v. Sommermeyer*, 61 N. W. Rep. [Wis.], 311; *Oberfelder v. Kavanaugh*, 29 Neb., 427; *Farwell v. Cramer*, 38 Neb., 61; *Melick v. Varney*, 41 Neb., 105; *McCord v. Krause*, 36 Neb., 764; *Kilpatrick-Koch Dry Goods Co. v. Bremers*, 44 Neb., 863.

HARRISON, J.

This action was commenced by plaintiff in the district court of Douglas county against the defendants, on a claim not due. It also filed an affidavit setting forth the statutory grounds authorizing the issuance of an attachment in such action. A writ of attachment was ordered, and was issued and served. Motion to dissolve the attachment was presented and, on hearing, sustained. The attachment was dissolved and the cause dismissed. The plaintiff has prosecuted an error proceeding to this court.

At the time of the hearing of the motion to dissolve the attachment, or immediately prior thereto, the plaintiff filed an application for a continuance of such hearing, supported by affidavit. The application was denied, and this action is made the subject of one of the assignments of error. The main tendency of the evidence which it was asserted might be produced, if a continuance was granted, would have been to prove that the defendants had fraudulently contracted the debt in suit; and it would have been incompetent in the present proceeding, this being an action instituted upon a claim before it was due. (*Caulfield v. Bittenger*, 37 Neb., 542.) An examination of the record convinces us that there was no error in the refusal to grant a continuance, of which the plaintiff has any just complaint.

It is urged that the statements of the affidavit in attachment were not sufficiently traversed or denied. Whether this was true or not, the question does not appear to have been raised on the hearing in the trial court, and hence will not be considered here. (*Dunham v. Courtnay*, 24 Neb., 627.)

The defendants had given, at or about the time of the

attachment, certain mortgages to some of their creditors, as security for the payment of their indebtedness to such creditors, which it is claimed was excessive security, and furnished, as a matter of law, ground for sustaining the attachment. The prevailing doctrine of this court on the subject of excessive security is as follows: "The disproportion, if one exists, between the value of chattels mortgaged and the amount thereby secured affords no basis for a presumption of law. It is a matter of evidence to be accorded such weight as in the light of surrounding circumstances it is entitled to receive in the determination of a question of fact." (*Grand Island Banking Co. v. Costello*, 45 Neb., 119.) If the evidence had established that excessive security had been given, a point as to which it was conflicting, it would have been but evidence to be considered with the other facts and circumstances bearing on the question of fraud, as a matter of fact. It appears from the evidence that the defendants, on June 21, 1893, and during a number of years prior thereto, were conducting a wholesale grocery business in the city of Omaha, as partners, under the firm name of Sloan, Johnson & Co. On the date mentioned the firm was heavily indebted to various creditors, and, as security for the payment of existing liabilities, executed and delivered to the First National Bank of Omaha a chattel mortgage, the amount which it was given to secure being stated therein as $49,576.60; also a similar instrument in favor of the Colorado National Bank of Denver, in the stated sum of $30,000; the property included in the two mortgages being all the stock of merchandise belonging to the firm. On the same date there was also assigned to the second of the banks named book accounts of the firm amounting to the sum of $15,000, and subsequently more of the book accounts were assigned and parcelled out or delivered to others of the firm's creditors.

On the same date that the said chattel mortgages were executed to the banks, one member of the firm, William G. Sloan, executed and delivered to his wife, Ruth Anna

Sloan, a mortgage on his residence property to secure a stated indebtedness in the sum of $6,432.81, and the other member of the firm, Jonas P. Johnson, gave his wife, Ella G. Johnson, a mortgage on his residence property in the sum of $9,861.31. It appears that the property mortgaged to Mrs. Sloan was worth or valued then at about $15,000, and Mr. Johnson's residence at about $14,000. It appears that some years prior to the time that the firm embarked in business in Omaha, William G. Sloan had two endowment policies of insurance on his life, which matured and were paid, one May 20, 1886, and the other June 1, 1889. The amount received in payment of the two policies was, in the aggregate, $3,087.46. These sums were paid to Mrs. Sloan on the dates we have mentioned, and immediately given to Mr. Sloan, who executed and delivered to his wife promissory notes, payable to her, in sums corresponding to the cash received by him. It was testified that Mrs. Sloan had received from some relatives $1,000, which she had loaned to Mr. Sloan. None of the principal or interest of the notes given by Mr. Sloan to his wife had ever been paid, and the whole amount claimed to be due for both principal and interest was the consideration stated in the mortgage given by Mr. Sloan to his wife. It further appeared that Mr. Johnson had an endowment policy of insurance on his life, payable to himself, which was, when paid at its maturity, paid at his request to his wife, kept by her until the next day, when it was by her turned over to him, and he gave his wife a promissory note in a like amount, signed by himself and William G. Sloan. None of the principal or interest had ever been paid, and their aggregate amount constituted the consideration stated in the mortgage to Mrs. Johnson, of date June 1, 1893. All the premiums on the policy of William G. Sloan had been paid by the assured and the premiums on Johnson's had been paid by him. These transactions between the husbands and wives were gifts or attempted transfers of the money to them as gifts, and subsequent and immediate

loans thereof to the donors, the husbands. The husbands, at the dates of the several occurrences, were solvent and amply able to make the presents to their wives. It appears that one was then estimated to be worth $40,000 and the other $80,000. One question which arises is, could the husbands make gifts of money or personal property to the wives, and it become the separate property of the wives and not subject to the disposal of the husbands, or liable for their debts? This is not a direct proceeding to annul the gifts from the husbands to the wives, but the validity of the gifts is drawn into question in the determination of the good faith or fraudulent character of the mortgages from the husbands to the wives to secure the payment of the debts which, if they existed, were created when the husband gave to the wives the money derived from the life insurance policies, and received it from them again as loans, which were then evidenced by promissory notes. Some of the transactions took place in another state than this, but the law of the state in which they occurred, in regard to the rights of married women to acquire and own property, was not introduced in evidence, is not contended to be different from that of our own state, and must be presumed to be the same on the subject involved. Our statutory law as it existed at the dates referred to, and now exists, is as follows: "The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal, or mixed property which shall come to her by descent, devise, or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage, and shall not be subject to the disposal of her husband, or liable for his debts," etc. (Compiled Statutes, ch. 53, sec. 1.)

"At common law a married woman was not allowed to possess personal property independent of her husband." (2 Kent's Commentaries [13th ed.], p. 163.)

"At common law there cannot be a gift of chattels *inter vivos* from the husband to the wife during coverture; for, being but one person in law, she cannot take independently of him. (*Neufville v. Thomson*, 3 Edw. Ch. [N. Y.], 92.) But equity has always sustained such gifts whenever made without the intervention of a trustee when the claims of creditors were not affected, and when the gifts were clearly proved. If in fact made, equity will sustain and enforce the gift." (3 Wait, Actions & Defenses, 498, and cases cited.)

The case of *Sexton v. Wheaton*, 21 U. S., 229, an appeal from the circuit court of the District of Columbia, the object of the action being to subject a house and lot in Washington city, to which Sally Wheaton held the legal title, to the payment of a judgment debt against her husband, held: "A voluntary post-nuptial settlement, made by a man who is not indebted at the time, upon his wife is valid against subsequent creditors." And it was remarked in the body of the opinion: "It would seem to be a consequence of that absolute power which a man possesses over his own property that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law."

It may be said that at common law a direct gift of chattels from husband to wife could not be made, because she was incompetent to receive it; that courts of equity have upheld and will uphold such gifts. A number of states have statutes by which the common law rule has been abrogated, and gifts from the husband to the wife are valid and the property thereby transferred becomes her separate property.

We will now turn our attention to some of the sayings and decisions of this court bearing either generally or directly on the subject at present before us.

In the opinion in *Webb v. Hoselton*, 4 Neb., 308, it was stated: "At common law the husband and wife are

treated as one person, that is, the legal existence of the wife is suspended during marriage, and she becomes incapable of making a valid contract to bind either herself or her estate. Equity, however, following the rules of the civil law, treats the husband and wife as distinct persons, capable of having separate estates, debts, and interests, and regards a married woman, as to her separate property, as a *feme-sole.*"

In *May v. May*, 9 Neb., 16, after a review of the decisions in a number of cases from the courts of different states on the subject of contracts between husband and wife, and their enforcement in the courts by suit, it was observed in the opinion, written by COBB., J.: "In none of the above mentioned states has the legislature passed any act which in terms changes the common law in regard to the nature and character of the marriage relation, or the unity of the persons of husband and wife, and the above cases must of necessity have gone upon the theory that the statutes of the said states respectively, defining the rights of women in the marriage relation, in respect to the ownership, control, and disposition of property, have, in effect, done away with the technical unity of husband and wife as formerly existing at common law. At least such is my opinion."

In the decision in the case of *Smith v. Dean*, 15 Neb., 432, MAXWELL, J., who wrote the opinion, referring to the common law doctrine, that certain rights of a woman were suspended during coverture, observed: "The doctrine evidently originated at a time when a wife was regarded as little better than a slave, and has but little application to our state of society, and will not be extended beyond the strict requirements of the law." For a further and more extended expression of righteous indignation upon the subject, and in much the same strain, the reader is referred to the opinion in *Good v. Good*, 19 S. E. Rep. [W. Va.], 382.

In *Aultman v. Obermeyer*, 6 Neb., 260, it was held: "The common law in respect to the rights of husband and

wife is in force in this state, except so far as it has been modified by statute."

But it is also established that when it is apparent that a deed from the husband to the wife was made in pursuance of a valid antenuptial agreement, or upon a sufficient consideration, it may be sustained in equity. ·

In regard to this last proposition it was said in *Wanzer v. Lucas*, 44 Neb., 759: "The doctrine has been freely asserted by this court that the deed of a husband to his wife, although void at common law, will be upheld whenever equitable grounds exist therefor, such, for instance,. as a valuable consideration;" citing *Smith v. Dean*, 15 Neb., 432; *Johnson v. Vandervort*, 16 Neb., 144; *Furrow v. Athey*, 21 Neb., 671; *Ward v. Parlin*, 30 Neb., 376; *Hill v. Fouse*, 32 Neb., 637.

In the case of *Davis v. First Nat. Bank of Cheyenne*, 5 Neb., 242, in which an action had been commenced by the bank against Elizabeth Davis, a married woman, upon a promissory note executed by her in settlement of an amount that she had overdrawn her account with J. H. Rogers & Co., the note was payable to J. H. Rogers & Co., and was sold to the First National Bank of Cheyenne. In reference to the deposits to her account with J. H. Rogers & Co. it was stated in the opinion: "A large portion of these deposits were made by the husband of the plaintiff; but he says that they were made for her separate use, on her account, and to her credit. * * * It seems very clear from the testimony in the case that the deposits made by the husband were for the separate use of the plaintiff, and became her separate property, and were controlled, drawn out of the bank, and disposed of by her for her own use."

In the opinion in the case of *Furrow v. Athey, supra*, it was stated for the court by REESE, J., after having decided that money which the husband had received from the wife for her separate estate was a sufficient consideration for a deed of lands to her by him: "But aside from this we can see no reason why the decree of the

district court is not correct. It appears that in 1868 Charles Furrow, the husband, now deceased, purchased the land in question from the United States. At that time he, with defendant, his wife, settled upon it, and they resided there together until his death which occurred in 1880. In 1879, while in poor health, he conveyed the premises to her. It was their home. They had a family of children, the plaintiffs, and the deed was evidently executed to her in order that she might be enabled to rear and educate the family in which she was as much interested as the husband, and which he fully understood at the time he made the conveyance. If it had been made to a third party as trustee, and by him conveyed to defendant, it perhaps would never have been questioned. It is just as good without such intervention."

In the case of *Callender v. Horner*, 26 Neb., 689, the first paragraph of the syllabus is as follows: "In an action by attachment against a husband the wife brought an action of replevin and recovered possession of the goods and had judgment in the court below. It appears that the parties had formerly lived in Iowa and were possessed of a valuable farm and considerable personal property; that there was a first mortgage on the farm of from $8,000 to $9,000, also a second mortgage for more than $2,000, and chattel mortgages to the latter party on the personal property. The land was sold under the first mortgage and redeemed by the second mortgagee, who thereupon foreclosed his chattel mortgages and purchased the property, and after satisfying his own claim, delivered the surplus to the wife. Held, no fraud being charged or proved in the premises, that the wife took a good title as against the creditors of her husband." It appears that in the trial of the case to which we have just referred, the wife testified that she received the surplus of the property as her "divide." It is said in the body of the opinion: "The examination fails to make clear what was meant by the 'divide' she speaks of. We are left to infer,

however, that the land mortgaged was the homestead, and that by surrendering that, she was promised the surplus after paying the mortgage debts; or perhaps Mr. Coan may have turned over the surplus to her as the equitable owner after paying his claim. Mr. Coan's testimony was not taken. No fraud is charged against him or against the defendant in error in that transaction and we cannot infer it. The presumption is that she obtained the property honestly, and there must be some proof offered to overcome this presumption, to authorize a court to declare the transaction fraudulent. So far as the testimony shows, the property had been transferred to Coan to pay the debts of the husband, and the return of the part of the property to the wife was either in consideration of the surrender of some right, as that of a homestead, or from a sense of justice on the part of Coan. In addition to this, most of these transactions seem to have taken place before the debt to McCormick had been incurred."

In the case of *Morse v. Raben*, 27 Neb., 145, the right of husband to make a gift to the wife at a time when he was solvent and the gift did not interfere with the rights of creditors was considered and it was held: "In an action in the nature of a creditor's bill, to set aside a deed made to the wife of a judgment debtor by the vendor of real estate, in order that the real estate might be applied to the payment of the plaintiff's judgment, there was sufficient evidence presented to the trial court to sustain the finding that the husband, while in a prosperous financial condition, caused to be conveyed to his wife one hundred and sixty acres of land in the county of B., which conveyance was made in the year 1883. In the year 1886 it appears that the wife sold the real estate, realizing by such sale a large increase upon the amount invested at the time of the purchase; that she permitted the husband to take the money received from the sale and apply it to the payment of the indebtedness of a partnership of which the husband was a member; that soon after the partner-

ship failed and became insolvent, when the husband re-paid to his wife out of the partnership assets the money which he had received from her, and which had been de-voted to the use of the partnership; that with this money, by direction of the wife, the husband purchased the real estate in controversy, and that they had borrowed a large sum of money upon the real estate, which, together with the money received from the husband, was applied to the construction of the house thereon, rendering the property valuable; that the money expended in purchasing the property and in constructing the building thereon, was equal to the amount borrowed upon the credit of the property added to the amount formerly loaned by the husband to the wife.  In such case, the decree of the dis-trict court dismissing the creditor's bill was affirmed.", And in the body of the opinion appears the following: "Since Mrs. Raben became the owner of the real estate in Butler county at a time when the solvency of her hus-band could not be questioned, and perhaps for value actu-ally paid by her, although we do not think this a ma-terial matter, there is no doubt but that she could retain the money arising from the sale of that real estate.  This would be thirteen hundred dollars."

From a review of the decisions of this court upon the rights of married women, we think it a fair conclusion that the equitable rule in respect to gifts by husbands to their wives has at all times been recognized, and that it has been applied and enforced since the enactment in 1871, of what is known as the "Married Woman's Act."  From which it is fair to say that the equitable rule by which what was or would be held valid as a gift prior to such act was not destroyed or rendered nugatory by such act, and this is a reasonable and true view, for the true intent and purpose of the "Married Woman's Act" are apparent from its terms and the circumstances and conditions ex-istent at the time of its passage.  The rules of the com-mon law in regard to the rights of a married woman were to be largely abrogated, set aside, and new rights con-

ferred upon her, the law as to her and her rights in rela-
tion to property, contracts, etc., liberalized, her rights
and powers were to be extended, and in no sense or par-
ticular restricted, limited, or made less than they had
theretofore been.    This being true, the act did not annul
the rule in equity by which gifts by a husband, when
solvent, to his wife will be upheld; did not operate to
render invalid what was before held to be valid.    (*Whitney
v. Wheeler*, 116 Mass., 490.)   We conclude that the gifts
from the husbands to their wives were valid.    There was
ample evidence to sustain a finding that the gifts were
actually and fully consummated.

It being determined that the debts to the wives were
true, existing debts, the mortgages to the wives, if taken
in good faith, were not fraudulent.   "A husband may
lawfully give his wife a deed or mortgage to secure a
pre-existing *bona fide* debt owing to her, and such convey-
ance is not fraudulent as to other creditors if taken in
good faith and without any fraudulent purpose."   (*Ward
v. Parlin*, 30 Neb., 376;  *Hill v. Bowman*, 35 Mich., 191;
*Dice v. Irwin*, 11 N. E. Rep. [Ind.], 488, and cases cited.)

It is contended that the alleged debts from the hus-
bands to the wives were, at the time of the renewals and
execution of the mortgages, barred by the statute of limi-
tations, and should not be recognized for this reason.
The statute of limitations would not run in favor of the
plaintiffs, strangers to the transaction between the hus-
bands and wives.

The point is raised that the defendants had no interest
in the property attached which entitled them to be heard
on motion to discharge the attachment.   A levy of the
writ was made on the property mortgaged to the wives,
as the property of the defendants, and the banks were
made garnishees in an effort to reach the property mort-
gaged to them, the ground being that the mortgagees
had property of defendants in their possession or under
their control.   The plaintiff had the writ levied upon the
property as belonging to defendants, and claims a lien

on other of the property by virtue of a garnishment based on allegations that the garnishees had in their possession property which belonged to defendants, and they cannot now successfully urge that the defendants have not interests in the property such as would permit them to attack the attachment. (*Grimes v. Farrington*, 19 Neb., 44; *Kilpatrick-Koch Dry Goods Co. v. Bremers*, 44 Neb., 863.)

At the hearing on the motion to discharge the attachment before the judge of the district court, at chambers, after the order dissolving the attachment the judge made this additional order: "And it further appearing that the suit herein is based upon a claim not due at the time it was brought, and not yet due, said cause is hereby dismissed." It is insisted that it was error for the judge to finally dismiss the cause; that his jurisdiction at chambers did not extend to such an order. In section 239 of the Code of Civil Procedure, under the head of "Attachment in Certain Actions," it is provided that when application for the issuance of a writ is presented: "If the court or judge refuse to grant an order of attachment, the action shall be dismissed, but without prejudice to a future action," etc. "Where the attachment is not necessary to give the court jurisdiction of the cause, the dissolution of the attachment defeats that particular writ and does not touch the merits of the action or dismiss the cause. They are independent proceedings. But where the attachment is not a mere incident to the main action, and is the foundation of the suit and necessary to the jurisdiction of the court, an order setting aside the attachment will terminate the action unless the proceeding is taken up for review. * * * Where, also, a statute permits an attachment to issue upon a debt not due, a dissolution of the attachment proceedings will be a termination thereof, because in no proceeding but by attachment can an action be maintained before the demand has matured." (1 Shinn, Attachment & Garnishment, sec. 354. See, also, *Voorhis v. Michaelis*, 45 Kan., 255; *Gowan v. Hansen*, 55 Wis., 341; *Moore v. Corley*, 16 S. W. Rep.

[Tex.], 787; *Wingo v. Purdy*, 87 Va., 472.) "If the order of attachment is granted, but should afterwards be set aside for the reason that the grounds therefor were not true, then the action should be dismissed." (*Pierce v. Meyers*, 28 Kan., 364.) "The right, however, to maintain the action on a claim before it is due depends altogether upon the attachment, for, as said in *Harrison v. King*, 9 O. St., 395, 'If the attachment fails, the action falls with it.' " (*Seidentopf v. Annabil*, 6 Neb., 524.) The action terminated with the dissolution of the attachment in the present case, as it was discharged for the reason that the statements of the affidavit in attachment were not true. And whether the judge had jurisdiction to dismiss the main suit or not, that he did so could not prejudice the rights of the plaintiff; hence, this assignment presents no available error.

It is urged that the evidence was insufficient to sustain the findings and order of the trial court. A careful review of the evidence convinces us that this argument must be overruled; that the conclusions of the trial court were supported by the evidence. It follows from the foregoing conclusions that the order of the district court will be

AFFIRMED.