WINSLOW STATE BANK, APPELLANT, v. PAUL WESTLIN ET AL., APPELLEES.

FILED JANUARY 6, 1933. No. 28322.

*Robins, Yost & Lamme* and *Dolezal, Mapes & Johnson,* for appellant.

*Cook & Cook, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This action was begun in the district court for Dodge county by the Winslow State Bank, plaintiff, against Paul Westlin, defendant, to recover $1,426, under the terms of a promissory note dated October 29, 1930, which was executed and delivered by defendant Westlin to Harvey Realph and by the latter sold and assigned to the plaintiff bank. The bank alleged that there is now due $1,-439.84 from Westlin, together with interest thereon at the rate of 10 per cent. per annum from March 9, 1931. Westlin admits that he signed the note, but he alleged that the plaintiff bank is not the holder of the note in due course and that no valuable consideration was paid therefor to Realph by the bank.

Anna M. Westlin, the defendant's wife, filed a petition in intervention, wherein she alleged that on February 24, 1931, for a valuable consideration, the defendant executed and delivered to her his promissory note in the sum of $2,650, bearing interest at the rate of 6 per cent. per annum, and that, as security therefor, he gave her his chattel mortgage, which was filed of record the same day. It appears that a sale of the property included in the chattel mortgage was held, at which the defendant acted as his wife's agent, and that an order of attachment and garnishment was entered against the proceeds of the sale pursuant to proceedings instigated by the plaintiff bank. The intervener contends that she is entitled to the proceeds of the sale, except the amount of $500, which she alleges is due Frank H. Peterson, to whom she and the

defendant are indebted under a note executed by them July 14, 1928, in his favor.

The court found and decreed that $1,570.16 was due the plaintiff bank from the defendant under the terms of the note held by the bank. But the court also found and decreed that the mortgage of the defendant's wife is a valid lien upon the property of the defendant, which was sold at auction, and that the intervener is therefore entitled to recover $1,016.49, or the balance remaining after the payment of $561.65 to Frank H. Peterson, above named. The court further found that the order of attachment and garnishment, filed by the bank against the proceeds of the sale of defendant's property, is not sustained by the evidence. From the judgment so rendered, the bank has appealed.

The main question for determination here is whether the defendant borrowed money from his wife and, if so, whether the chattel mortgage given to secure such loan was executed in good faith.

The record discloses that in 1928 and again in 1930, the defendant's wife instituted proceedings for a divorce, but that each time a reconciliation followed, and the parties are now living together. In the petition for divorce filed in June, 1930, it is stated that, "during the years 1928 and 1929 the defendant borrowed from the plaintiff (the intervener herein) the sum of $2,300, no part of which has ever been repaid to the plaintiff." It may be observed that the note given by the defendant to his wife in the sum of $2,650 represents the above $2,300, together with interest thereon, all of which the defendant admits was loaned to him at various times by his wife with the understanding that he was to repay her. That the defendant's wife considered him indebted to her is also established by the evidence of an attorney whose services she procured in the proceedings for a divorce.

It appears that on June 2, 1930, when the divorce proceedings were pending, an attorney drafted a mortgage for the parties, which was not recorded until February 21 of the following year, for the reason that the defend-

ant and his wife desired to withhold such mortgage from record until the payment and discharge of another mortgage against the defendant which became due and was paid in January, 1931. It further appears that the February 21 mortgage was substituted by another mortgage dated February 24, 1931, and this for the reason that the parties desired to make some change in the items listed therein.

The record also discloses that the intervener, the defendant's wife, received money from her grandfather at various times, and that, after his death, she received an inheritance from his estate. It also appears that she received money from her brother at one time. An exhibit, compiled from the books of the bank in which the intervener maintained a checking account separate from that of the defendant's discloses that the following amounts of money were received by her from her grandfather and deposited to the account of her husband, namely:

"September 2, 1927, check $100 Peter Murray (the intervener's grandfather) to Anna M. Westlin. Deposited to Paul Westlin account.

"April 11, 1929, check $1,016.34 Peter Murray Estate to Anna M. Westlin. $350 deposited to account Paul Westlin. $666.34 deposited to account Anna M. Westlin.

"May 13, 1929, check $700 H. P. Dahl to Anna M. Westlin. Deposited to account Paul Westlin.

"May 21, 1929, check $350 Anna M. Westlin to Paul Westlin. Deposited to account Paul Westlin."

The record also discloses that at one time the defendant's wife borrowed $500 from her cousin, Frank H. Peterson, as above mentioned, for which she and the defendant signed a note, and it appears that this amount was deposited to the defendant's account but that the intervener paid the interest as it became due on the note.

Certain canceled checks are in the record tending to prove that at various times the defendant's wife paid for numerous items out of her own checking account, including feed, hardware, trucking, hired help and other

expenses, and it appears to have been agreed between them that the defendant would give his wife a note secured by a chattel mortgage after all loans had been completed. And from the testimony of the defendant's wife, it is disclosed that she had no knowledge of the note executed by her husband in favor of the plaintiff bank until a notice was received from the bank stating that an interest payment would shortly be due.

The defendant purchased a Buick automobile early in 1929, valued at $1,425, and after the car had been driven about 20,000 miles he gave it to his wife. It appears, however, that the entire amount due on the car had not been paid by the defendant, and that his wife made some payments thereon. The Buick was traded for a Ford automobile and $150 in cash, which was applied to the remainder due on the other car. The Ford was mortgaged for more than $300 and the money so received was turned over to the defendant. And it also appears that the Ford was later traded to a man who assumed the mortgage on the car and allowed the defendant a credit of $50 on a threshing bill, and, in addition thereto, the defendant's wife received an old model of a Ford valued at about $15. During all of this period, the defendant had access to and drove the cars in question. We fail to see that the defendant's wife materially gained in the above transactions.

A review of the evidence does not disclose that the mortgage by the defendant to his wife was not given in good faith, nor is it disclosed that it was given with the intent to defraud the plaintiff bank or any other creditor. And particularly is this the fact, when it is taken into consideration that there was some marital difficulty between the parties in 1928 and in 1930. Surely it will not be contended that, with domestic difficulties prevailing, the parties contemplated a transfer of the property from the husband to the wife to defraud the husband's creditors. The evidence establishes that the money obtained from his wife by the defendant was considered merely as a loan and that such loan was to be repaid.

And it is to be remembered that the petition for divorce filed in June, 1930, alleged that at various times the defendant had been loaned certain sums of money in the aggregate sum of $2,300, no part of which had been repaid to her.

This court has held to the following proposition:

"A husband may lawfully give his wife a deed or mortgage to secure a preexisting *bona fide* debt owing to her, and such conveyance is not fraudulent as to his other creditors, if taken in good faith, and without any fraudulent purpose." *Ward v. Parlin,* 30 Neb. 376; *Dayton Spice-Mills Co. v. Sloan,* 49 Neb. 622. And we have also held that, when a conveyance from a husband to his wife is attacked by a creditor, the presumption is that such conveyance was fraudulent, but such presumption is not one of law but merely of evidence, and is applicable only to creditors whose debts existed at the time the conveyance was made. *Jansen v. Lewis,* 52 Neb. 556. In *Clarke Drug Co. v. Boardman,* 50 Neb. 687, we held that an insolvent son may prefer his mother to his other creditors by securing her debt, but that the burden was on the mother to show by a preponderance of the evidence that such preference was in good faith and not for the purpose of defrauding the other creditors.

In the present case the judgment is amply supported by the evidence, which discloses that the defendant's wife had some financial means of her own; that she many times advanced money to her husband; and that, in acknowledgment of such loans of money, the defendant gave her his note secured by a chattel mortgage. These loans of money all transpired before the defendant obligated himself to the plaintiff bank. In view of the facts and the law applicable thereto, we conclude that the judgment is right, and it is hereby

AFFIRMED.